EASTERN DIST.
*May,* 1836.

TAGIASCO ET AL.
*vs.*
MOLINARI'S
HEIRS.

## TAGIASCO' ET AL. *vs.* MOLINARI'S HEIRS.

### APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

The force and effect to be given to instruments, which have for *signatures* only the ordinary *marks* of the parties to them, depend more upon rules of evidence than the *dicta* of law relating to the validity of contracts required to be made in writing.

The genuineness of instruments under private signature, depends on proof; and in all cases when they are established by legal evidence, instruments *signed by the ordinary mark* of a person incapable of writing his name, ought to be held as written evidence.

The rules of evidence by which courts of justice in this state have been governed, since the change of government, have been borrowed in a great part from the English law, as having a more solid foundation in reason and common sense.

According to the rules of evidence as adopted in this state, the ordinary mark of a party to a contract, places the evidence of it on a footing with all private *instruments in writing*.

The general rule is, that proof of the signatures of the witnesses to an instrument of writing *under private signature*, when they are dead or absent, does not establish *that* of the obligor or principal.

Proof of the genuineness of an instrument under private signature, signed by the party making her ordinary mark or cross, and attested by two

witnesses, may be made by parole evidence, after the witnesses and  <span style="float:right">Eastern Dist.</span>
party are dead, by proving the witnesses' signatures, and that they were  <span style="float:right">May, 1836.</span>
respectable and of good character, who would not attest a forgery.
The party who puts the *initials* of his name, gives a kind of approbation  <span style="float:right">Tagiasco et al.<br>vs.<br>Molinari's</span>
to the instrument on which he writes them, and is binding on him. This  <span style="float:right">heirs.</span>
is not materially different from an *ordinary mark.*

This is an action instituted by the executor and brother of Marie Louise Tagiasco, f. w. c., deceased, to recover a lot of ground with its improvements, in the city of New-Orleans, which the said Marie Louise and Jean Tagiasco, f. p. c., inherited from their deceased mother, Louise Baptiste Roux.

The facts and pleadings of this case are accurately and fully stated in the following judgment, rendered by the parish judge.

" The plaintiffs, as heirs of the late Marie Louise Roux, a free woman of color, claim from the defendants, as heirs of the late Antoine Molinari, the possession of a certain lot and buildings thereon, situate in Dauphin, between St. Peter and Toulouse streets, which they allege were sold on the 24th of December, 1816, by the said Antoine Molinari to the said Marie Louise Roux, for the sum of three thousand dollars cash, he, the vendor, Antoine Molinari, reserving to himself the usufruct and possession of the property thus sold during his lifetime; the said plaintiff further alleging that the said Antoine Molinari, died on the 22d of November, 1833, and that the defendants, having been duly called upon to give up to them the possession of said property, the rent of which they state at forty dollars per month, have refused so to do, further pray that the said defendants be condemned to pay to them the rent of said property, at the rate of forty dollars per month, from the said 22d day of November, 1833, until the day of delivery.

" The defendants, in their answer, after denying generally all the facts and allegations of the plaintiffs, except those specially admitted, recognize that there was an act of sale of the property claimed by plaintiffs, passed before Cristoval De Armas, notary public of New-Orleans, but they allege that the said sale was feigned and simulated, and calculated

65

EASTERN DIST.
*May*, 1836.

TAGIASCO ET AL.
*vs.*
MOLINARI'S
HEIRS.

to cover a donation prohibited by the laws of the state, and refer to a counter letter bearing the same date as the deed relied on by the plaintiffs. The defendants further allege, that Marie Louise Roux, f. w. c., under whom the plaintiffs claim, lived in open concubinage with Antoine Molinari at the time the alleged deed of sale was made and the counter letter given.

" The plaintiffs, in support of their claim, introduced an act of sale of the property claimed by them, passed before Cristoval De Armas, then a notary public of New-Orleans, on the 24th of 'December, 1816, and they introduced testimony to show that Molinari died about the 20th or 22d of November, 1833, and that the property claimed rents from forty to fifty dollars per month.

" The defendants introduced in evidence a certain paper or document, at the bottom of which is to be found a cross (X) with the words "*marque ordinaire*" of Marie Louise Roux, and the *signatures of two witnesses*, J. Anglade and Phillippe Pajeaud. That paper contains a declaration from Marie Louise Roux, made in presence of the two said witnesses, that the act of sale of certain property, situated in this city, in Dauphin, between St. Peter and Toulouse streets, to her made by Antoine Molinari, before Cristoval De Armas, notary public, under the same date as the declaration, to wit : the 24th of December, 1816, is purely confidential and simulated ; that the three thousand dollars, which by said act appear to have been paid in cash, in presence of the notary, were funds which Molinari himself had the very same day lent to Marie Louise Roux, in order that they might be represented before the notary, and thereby an appearance of truth and authenticity might be given to the sale, when in reality the act was only intended to cover a legacy of the property which Molinari wished to make of the same to the said Marie Louise and to her heirs after her death.

" The defendants, moreover, introduced several witnesses, who recognized the signatures of J. Anglade and Phillippe Pajeaud, the two attesting witnesses at the foot of the above mentioned document, and declared that the said J. Anglade

and Phillippe Pajeaud are dead, and that they were perfectly honest men ; they also proved by testimony that Marie Louise Roux lived in open concubinage with Antoine Molinari at the date of the act of sale.   They further proved, by two notaries of New-Orleans, that it has been a long standing usage and custom before and since the new Code, to receive acts under private signature, in presence of two witnesses, though they bear no other signature *than the ordinary mark of the parties.*

EASTERN DIST.<br>*May*, 1836.<br>——————<br>TAGIASCO ET AL.<br>*vs.*<br>MOLINARI'S<br>HEIRS.

" The court, after carefully examining the evidence, and hearing the arguments of counsel, considering,

" 1. That under the laws, as in the opinion of the court they stood on the 24th of December, 1816, a person who could not write was not prohibited from passing an act under private signature, by making a mark instead of a signature, in presence of two witnesses.

" 2d. That the usage and custom to pass such acts, appear to have been for a long time prevalent in this state.

" 3d. That Marie Louise Roux, under whom the plaintiffs claim, lived in open concubinage with Antoine Molinari at the time the act of sale was passed.

" 4. That the whole transaction presents nothing but an illegal donation, disguised under the form of a sale.

" It is, therefore, ordered, adjudged and decreed, that judgment be entered in favor of the defendants, and that the plaintiffs pay the costs."

The plaintiffs appealed.

*Morphy*, for the plaintiffs and appellants.

1. In this case only the signatures of the witnesses to this pretended counter letter are proven.   Proof of the signatures of the witnesses does not prove that of the obligor or principal. 7 *Martin, N. S.*, 58.

2. Under the Civil Code of 1808, the use of a cross or *marque ordinaire* of the party, was not permitted or authorised even in public acts passed before a notary.   According to the Louisiana Code, a person unable to write may make a cross or his mark, but in public acts only.   *Civil Code* 307, *arti-*

cles 218, 223, &c., *and* 229, *articles* 93, 99, 100 *and* 101. *Louisiana Code, articles* 2231, 2232, *and* 2237.

3. No parole evidence can be admitted to prove any thing beyond or against the contents of a written instrument. *Civil Code,* 345, *article* 2. 8 *Martin, N. S.,* 542.

4. Admitting the sale to be a disguised donation, it is valid; not being embraced by the prohibition concerning persons living in open concubinage. *Civil Code,* 233, *article* 114, 115, 116. *Loizeau, Traité des enfans naturels,* 668. 11 *Merlin's questions du droit, verbo donation, page* 238, *section* 5.

*Pichot,* for the defendants, contended that the judgment of the court below was correct, and should be affirmed.

*J. Seghers,* for plaintiffs.

1. The act relied on by the defendants is a nullity. Acts under private signature are required to be signed with the name of the party in his *own hand writing. Civil Code,* 307, *articles* 222, 223. *Ibid.* 305, *article* 218. *Louisiana Code,* 2238, 2240, 2232. 8 *Merlin's Repertoire, verbo signature.*

2. No parole evidence can be admitted against what is contained in an authentic act. *Civil Code,* 311, *article* 241. *Ibid.* 345, *article* 2. *Louisiana Code,* 2255.

3. The testimonial proof of the signatures of the two witnesses to the document relied on by the defendants, as a counter letter, is inadmissible, and should not have been received to prove the pretended signature or *mark* of the obligor. *Partida* 3, *title* 18, *law* 114; *and note* 5 *of Gregorio Lopez : Debe valer en vida de aguellos, &c.*

4. No party to a written contract, who had it in his power to obtain a counter letter, can be permitted to prove, by parole evidence, that the contract was simulated. 6 *Martin, N. S.,* 206. 8 *Ibid., N. S.,* 448. 4 *Louisiana Reports,* 169. *Note* 5, 8 *Lopez.*

*Mathews, J.,* delivered the opinion of the court.

This suit is brought by the plaintiffs, as heirs instituted by will, or universal legatees of a free woman of color, who was

named Marie Louise Roux. They claim a lot of ground and buildings thereon, and situated in Dauphin-street, between Toulouse and St. Peter, now in possession of the defendant, who holds it as natural tutrix of her minor children. She obtained judgment in the courts below, from which the plaintiffs appealed.

EASTERN DIST.
*May,* 1836.

TAGIASCO ET AL.
*vs.*
MOLINARI'S
HEIRS.

The facts of the case are as follows: Antoine Molinari, late husband of the defendant, previous to his marriage with her, lived in a state of concubinage with the testatrix, Roux, who in the testament by which she institutes the plaintiffs as her heirs, recognizes them to be her natural children; during the period of the concubinage, as above stated, the paramour conveyed to his concubine the property now in dispute, by authentic act, reserving to himself the usufruct of it during his lifetime. After his death, it remained in possession of the defendant, as tutrix of her children, unmolested, until the institution of the present action, for whom she claims the property as heirs to their father. In support of this claim, and in opposition to the title set up on the part of the plaintiffs, a counter letter, signed with the ordinary mark of the pretended purchaser, from Molinari, the father, attested by two witnesses, was offered and admitted in evidence on the part of defendant. In this instrument, the concubine acknowledges that the deed to her was fictitious, and made without any valuable consideration given for the lot pretended to have been sold. The right of the plaintiffs to bring suit under the will of their ancestor cannot be disputed, although an exception to this effect is found in the record.

The decision of the case depends mainly on the propriety of the opinion of the judge *a quo* by which he admitted the counter letter in evidence, and the effect which that instrument must have on the claims of the parties, in pursuance of legal principles applicable to the subject. Its introduction was excepted to on various grounds: 1st. That an act under private signature is invalid, unless signed with the name of the party in his own hand writing ; 2d. No parole evidence can be admitted against what is contained in an authentic act ; 3d. The testimonial proof of the signature of the two wit-

EASTERN DIST.
May, 1836.

TAGIASCO ET AL.
vs.
MOLINARI'S
HEIRS.

nesses to the pretended document cannot be admitted, and does not establish the signature or mark of the obligor ; 4th. That parole evidence unaided by a counter letter is not admissible to prove the simulation of a contract. The second and fourth of those propositions are so clearly in conformity with the laws of the country and the decisions of its courts of judicature, that if they stood alone and were applicable to the circumstances of this case, they would fully support the exception. But an instrument purporting to be a counter letter was offered in evidence and received by the court below ; the death, however, of the party to it, and of the subscribing witnesses, renders extremely difficult, proof of its genuineness and reality. Another question is raised as to the legal effect which acts under private signature have on contracts evidenced by them, when they are solemnized only by the ordinary mark of the party who knew not how to sign his name. Against the force of such instruments, as written evidence, although verified by witnesses, many authorities have been cited from the French jurisprudence, from the Spanish laws, and from the old Civil Code, the rules of which and the laws of Spain were in force in this state, at the time the contracts between Molinari and his concubine were entered into. We may at once admit that the doctrine maintained in France by the learned jurists of that kingdom, and the decisions of its tribunals of justice, prove the proposition assumed on the part of the plaintiff, viz : that acts *sous seing privé* evidenced by the *ordinary mark* of a party, in that country have not the force and effect of written evidence. This admission may be made without influence on the question now before the court, for the rules there established in relation to the celebration of contracts, and the evidence required to prove them, have not the force of law in this country. We will therefore look to the provisions of the Spanish law, and of the old Civil Code ; and may, without a violation of any general principle of jurisprudence, turn our attention to what was customary and usual in this country, touching contracts and the evidence by which they were supportable, both while it was a colony of Spain, and since it was brought under the government of the United

EASTERN DIST.

*May.* 1836.

TAGIASCO ET AL.
*vs.*
MOLINARI'S
HEIRS.

States, particularly to what has been usual since the change of government. The Spanish law directing the manner in which contracts in relation to real property were to be made, has apparent contradictions in it. We there find a general provision that all contracts may be entered into either by parole or by writing; and there are other rules which seem to imply that all those which relate to immoveables were required to be passed before a notary public. By some of the decisions of this court, the general rule which seemed to authorise all kinds of contracts to be made by parole, under the influence of that law, has been adopted. Since the change of authority in this country there has been so much specific legislation, and was at the time when the contracts now under consideration were entered into, that the former laws may have been referred to mainly as a source from which sound legal precepts might be drawn, being based on the Roman civil law, which contains an inexhaustible fountain of sound legal reasoning. Let us turn then to the texts of the code of 1808. We there find that contracts for the alienation of immoveable property made under private signature, and attested by a competent number of witnesses, are recognized as valid between the parties and their successors. But it is contended that an ordinary mark of a person who does not know how to write his name, is no signature. If we go to the root of the word, we find that it means any sign, stamp or mark. (See *Webster's dictionary, verbo signature.*) Perhaps, however, according to the general intendment of law, it means a sign manual: that is, the name of a person written or subscribed by himself. But the force and effect to be given to instruments which have for signatures only the ordinary marks of parties, depend more on rules of evidence than general *dicta* of law, relative to the validity of contracts required to be made in writing. The fact of the counter letter adduced in the present instance having been made in writing, cannot be denied; yet its validity and genuineness depends on proof, and in all cases where these things are established by legal evidence, instruments signed by the ordinary mark of a person incapable of writing his name, ought to be held as written

*The force and effect to be given to instruments, which have for signatures only the ordinary marks of the parties to them, depend more upon rules of evidence than the dicta of law, relating to the validity of contracts required to be made in writing.*

*The genuineness of instruments under private signature, depends on proof. And in all cases, when they are established by legal evidence, instruments signed by the ordinary mark of a person incapable of writing his own name, ought be held as written evidence.*

EASTERN DIST.
*May*, 1836.

TAGIASCO ET AL.
*vs.*
MOLINARI'S
HEIRS.

The rules of evidence by which courts of justice in this state have been governed, since the change of government, have been borrowed in a great part from the English law, as having a mere solid foundation in reason and common sense.

According to the rules of evidence, as adopted in this state, the ordinary mark of a party to a contract, places the evidence of it on a footing with all private instruments in writing.

evidence, in the administration of justice, according to the rules of evidence by which the courts of this state have been governed ever since the country became an integral part of the United States. These rules have been borrowed in great part from the English law, as having a more solid foundation in common sense and reason than the systems of other civilized states relating to this subject. Now according to those rules, thus adopted, the ordinary mark of a party to a contract places the evidence of it on a footing with all private instruments in writing. The same rules authorise proof of the genuineness of instruments similar to the one now under consideration, by evidence such as has been adduced in the present case. These rules must yield to positive legislation contrary to them; but we find none such any where in our law. The code which governs in this case, contains no express provisions, contrary to the general rules of evidence, which has been adopted as above stated. As to what has been customary, we find testimony which goes to establish the fact, that writings under private signatures, have both before and since the adoption of the Civil Code, been received as written acts, when they have only the ordinary mark of the parties, if made before two witnesses. That this custom should have been common in this country, is not surprising, when we consider the great neglect of education which seems to have prevailed, while it was a colony of the Spanish government, and which, it is feared, yet too much prevails. If arguments *ab inconvenienti* may be allowed a place in this opinion, (and in support of such arguments, we have the authority of Lord Coke, who declares that *argumentum ab inconvenienti semper valet in legem*,) it is evident, that great inconvenience would result to many of our fellow citizens, if acts, such as the one now before us, should be denied the rank of written evidence. Some difficulty still remains, in respect to the manner in which proof was made of the counter-letter. The party to it and the witnesses are all dead. The sign or signature of the former could not be proven, in consequence of their being rarely any different and distinct characters in ordinary marks.

In the case of Dismukes et al. *vs.* Musgrove, 7 *Martin,* N. S., 58, this court entered largely into the consideration of the rules which prevail under the English jurisprudence and in several states of the Union, in relation to the evidence required to support an instrument under private signature, when the parties and witnesses were dead, or from any other cause the testimony of the latter could not be procured; and it was then held, that in such a case proof would be required of the signature of the party, as well as those of the witnesses. We still adhere to the doctrine then established, although, perhaps, the rule presented is more onerous than that of the common law. But when it becomes an absolute impossibility to prove the handwriting, or sign manual of the party to an instrument, in consequence of his inability to write, must it be treated as a nullity in the face of evidence, and circumstances which are sufficient to convince every honest and disinterested man, (who attends to the testimony) of its truth and genuineness? We think not. In the present case, the signature of both witnesses were fully proven, and that they were men of such honesty, and general uprightness of conduct, that they could not have been induced to lend their aid to a forgery. The circumstance of the mode of life of Molinari and his concubine, is such as to raise a presumption that the sale to the latter was fictitious. The price as stated in the pretended act of sale, was three thousand dollars, said to have been paid at the time of executing the deed. At the period when this transaction took place, it was much more difficult to raise money than at present; the country was then very deficient in capital, if compared to the present existing state of things. It appears to us, that it would require faith, unsupported by evidence, to believe that a person of the class, condition and conduct of the mother of the plaintiffs, had at any one time in her possession, or at her command, the sum of three thousand dollars. In the case of Weis *vs.* Mainhaut, 4 Louisiana Reports, 121, the initial letters of a party's name were held to be binding on him, and it appears to us that they do not

Eastern Dist.
May, 1836.

TAGIASCO ET AL.
*vs.*
MOLINARI'S
HEIRS.

The general rule is, that proof of the signatures of the witnesses to an instrument of writing *under private signature, when they are dead or absent, does not establish that* of the obligor or principal.

Proof of the genuineness of an instrument under private signature, signed by the party making her ordinary mark or cross, and attested by two witnesses, may be made by parole evidence, after the witnesses and party are dead, by proving the witnesses' signatures, and that they were respectable and of good character, who would not attest a forgery.

The party who puts the *initials of his name,* gives a kind of approbation to the instrument on which he writes them, and is binding on him. This is not materially different from *an ordinary mark.*

66

EASTERN DIST.
May, 1836.

differ very materially from an ordinary mark. From a careful examination of the evidence of this case, both express and circumstantial, we are of opinion that the act of sale from Molinari to his concubine, Roux, was fictitious, and intended to disguise a donation made to her, which could not legally be done.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with costs.