The opinion of the court was delivered by
Nicholls, C. J.
In the examination of plaintiffs’ act of incorporation* we confine our attention to the specific objections to the *1545 same urged by the defendant. Sec. 677 of the Revised Statutes declares that the incorporators of a corporation organized under its authority “shall prepare and sign” an instrument either in an authentic form or private signature containing certain specified declarations, among which is not included a requirement that the names of the incorporators should be mentioned in the body of the act. They are required to “ prepare and sign ” an act which, after being so prepared and signed, approved by the District Attorney, *1546 and registered by the recorder, constitutes the “ subscribers ” to the same a body corporate. It is not essential that the incorporators should each and all be able to write their names.
“ In the primary sense of the word, a person signs ’ a document when he writes or marks something on it in token of his intention to Ibe bound by its contents. In the case of an ordinary person signature is commonly performed by subscribing his name to the document, and hence signature is frequently used as equivalent to ‘ subscription,’ but any mark is sufficient if it shows an intention to be bound by the document. Illiterate persons commonly sign by making a cross.” (Sweet’s Dict. Knox’s Estate, 131 Pa. St. 230.)
“ A signature consists both of the act of writing a party’s name and of the intention of thereby finally authenticating the instrument. It is not necessary that a testator should write his entire name. His mark is now held sufficient. And if the signature is made by another guiding his hand with his consent, it is held sufficient.” 2 Greenleaf Evidence, 674, followed in Watson vs. Pipes, 22 Miss. 466; Vines vs. Clingfoot, 21 Ark. 312; see also ‘Wills.’
“ All the definitions include a mark, and no dictionary limits a signature to a written name.” Zacharie vs. Franklin, 12 Peters (U. S.), 161; Shank vs. Butsh, 28 Ind. 19; Bickley vs. Keenan, 60 Ala. 295; (See the American and English Encyclopedia of Law, Vol. 22, verbo “ Signature,” and the same work, verbo “Mark,” Vol. 14, p. 457.)
Our decisions have recognized the ordinary mark of a person as being his signature in a number of cases; proof of the same having been made. See Tagiasco vs. Molinari’s Heirs, 9 La. 521; Madison vs. Zabriskie, 11 La. 251; Lopez vs. Berghel, 15 La. 43; Chaffe vs. Cupp, 5 An. 685.
It is not claimed that the marks subscribed to the act of incorporation are not those of the persons named. The act was submitted to the District Attorney, was approved by him and ordered to be registered. It is to be presumed that there was proper proof made to him of the signatures before he took such action. We think the act very clearly shows who are to have the direction of the affairs of the company. The third article provides for a president, a secretary and a treasurer, to be elected from time to time by the trustees. The fourth article provides for meetings of the Board of Trustees from time to time “ for the transaction of business.” A *1547 majority of the board is declared to constitute a quorum for that purpose, and such meetings are authorized to be called by the president, or any two members of the corporation.
The duties of the president, secretary and treasurer are not specifically set out, but such officers, in all organizations and corporations, have well recognized general duties, which could be made specific by by-laws, subsequently to be adopted by the Board of Trustees, who, obviously, were to have the general control of the affairs of the corporation. The terms of office of the president, secretary and treasurer were not fixed by the act. That matter was left open also to be provided for by by-laws. The Board of Trustees was a continuing body. In the event of vacancy, their number was to be kept filled from among members of the colored Methodist Episcopal Church in America, by election and vote of a majority of the remaining members of the board. The president was specially designated as the person upon whom all process should be served.
We fail to see wherein the act of incorporation is defective. The party with whom defendant dealt was unquestionably a corporation.
That preliminary question having been disposed of, we next direct our attention to the claim made by defendant' that although he entered into a contract of sale with the plaintiff corporation, that contract was set aside.
He says that plaintiff acknowledged that the title which it held at the time of the first contract was not a valid one, and it consented to a rescission of the contract of sale, and to the return of the deposit of money which he had made “to bind the sale.” That thereafter, he, himself, tendered to the plaintiff a new distinct proposition that he would purchase the property, provided it made to him a good title within thirty days from the date of the offer. He says that that offer has never been accepted; that plaintiff has taken no steps to acquire a new title, and has tendered to him the identical title which it had acknowledged to be bad. We do not think there was any abandonment or rescission of the contract of sale- — -there was simply a consent of both parties that the deposit should be returned to defendant to await, during thirty days, the final result as to the validity of the title offered. If, at the end of the time fixed, the title which plaintiff tendered was not a good one defendant was to have interest on his deposit during the forty-five days it was held by W. P. Ourtis. There was a postponement for the *1548 purpose evidently of meeting some objection which had been urged to the title, but no waiver of rights-on either side. What the precise objections were we do not know. Plaintiff took certam steps during the delays fixed in reference to the disposal of the property by it, which do not seem to have been previously taken. It obtained the approval of the quarterly conference of the Colored Methodist Episcopal Church to the proposed sale and its consent thereto, and the approval and consent thereto of the local preacher in charge of the church, and tendered title to defendant within the delay fixed. This tender was an acceptance of defendant’s proposition, if any new acceptance were needed,, as defendant claims. Whether the title tendered was a good and valid title is the only question we have to decide.
Defendant claims that the title is defective; that it is not absolute, and in fee simple, but held “intrust” in violation of the laws of the State. If, by this, defendant means that the title which the plaintiff received from Calvary Church was one m>t complete and absolute, he is clearly mistaken. The act declares that the vendor sells the property with full legal warranty to the plaintiff corporation, to have and to hold the same unto the said purchaser, his heirs and assigns forever. There is not a word of reservation, excep - tion or limitation on the part of Calvary Church. It parted with its entire title, conveying it to the plaintiff corporation. The clause at the very close of the act, which reads: “ In trust that said premises shall be used and kept, maintained and disposed of as a place of divine worship for the use of the ministry and membership of the Colored Episcopal Church in America, subject to the discipline, usage and ministerial appointments of said church as from time to time authorized and declared by the general conference of said church and the annual conference of said church, and the annual conference within whose bounds the said premises are situated,” is no part of the contract between plaintiff: and Calvary Church. It is an enunciation foreign to the disposition of the property between the parties, and merely the announcement of an intention of the corporation to connect itself with a superior religious body - Calvary Church had obviously no interest in that matter. The clause in question was simply one declaratory on the part of the purchasers of the object and purpose for which the pi rchaser made the purchase. It was, as we have said, an enunciatb n foreign to the disposition of the *1549 property, as between the vendor and vendee — a mere “ admission ” evidencing no “contract,” or “part of a contract” between them (33 Pac. 838-839) — and no “ contract” between the plaintiff corporation and the Colored Methodist Episcopal Church of America. C. C. 1814.
The title which the plaintiff received from its vendor being a good one, we are next to inquire what objections can be urged by the defendant to any title which plaintiff itself would convey. Defendant in general terms says that the property is held in trust and the title is bad, but he does not inform us who the party is for whom it is held and what particular danger is to be apprehended from its passing by sale out of the plaintiff to the defendant. The property has certainly not passed out of commerce, and so situated as to forcedly remain hereafter forever in plaintiff’s ownership and possession. Defendant himself says that such a condition of things would be violative of the policy of the law. There must be, therefore, some present method by which the property can be disposed of. We know of no one but the plaintiff who could dispose of it. It holds the legal title, and if there be any person or persons having any vested interest in it, they have not been made to appear. It may be that the plaintiff corporation as a condition of placing itself subsequently in religious connection with a religious body known as the Colored Methodist Episcopal Ohurch of America has been made to consent and has consented to deal with the property according to the rules and regulations of that body, and that in so doing they have consented to subordinate, for certain purposes, their power’s to the control or supervision of a superior body, but if they have done so the only interest which defendant has in that matter is that the Board of Trustees should have exercised their powers in the manner and form and under the conditions it had agreed to. If it has done so and the controlling, superior body approves and consents to the transfer defendant can have nothing to apprehend. The property will have been freed from further control and will pass unfettered and free into defendant’s ownership. Defendant has not pointed out to us anything which would tend to show that the property has been sold in strict accordance with the rules, regulations and discipline of the Colored Methodist Episcopal Church. The course pursued by the plaintiffs seems to have been in conformity to the same.
For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.

Act or Incorporation or the Plaintiee Corporation.
“ Wo, the undersigned members oí the Colored Methodist Episcopal Church in America, residing in the city oí New Orleans and State of Louisiana, have agreed and consented together to constitute and organize ourselves into an incorporation under the laws of the State oí Louisiana, providing for the organization of corporations for literary, scientific, charitable and religiouspurposes, under the following rules and articles.
article first.
This corporation shall be known by the name and style of Trustees of the Seventh Street Church of the Colored Methodist Episcopal Church in Am'eriea, and as such shall be capable of suing and being sued. It shall be domiciled in the city of New Orleans, where its president shall reside, upon whom all legal process shall be served.
Article Second.
The object of this association shall be to receive title to and hold, care for, and preserve the buildings and property of the Seventh Street Colored Methodist *1545 Episcopal Church in America, for the use of said church in the worship of Almighty God, together with such other properties as may be considered right and proper for the use of said church, or for a parsonage therefor.
Article Third.
All the members of this corporation shall be members of the Colored Methodist Episcopal Church in America, and shall have attained the age of twenty-one years. The trustees shall elect from time to time, from their own members, a president, a secretary and a treasurer.
All vacancies occurring in this corporal ion, by death, resignation or otherwise, shall be filled by the remaining members of the corporation by election and vote of a majority of the members at any regular meeting; or the'same may be filled in accordance with the provisions of the discipline of the Colored Methodist Episcopal Church in America.
Article Fourth.
The president, or any two members of this corporation, shall bo empowered to eallameeting of the same by giving a reasonable notice, and a majority of the members shall constitute a quorum for tile transaction of business.
Article Fieth.
This corporation, as a board of trustees, shall be governed by the discipline and rules of the Colored Methodist Episcopal'Church in America, enacted tor the government of trustees of churches, so far as the same is not contrary to or inconsistent with the nrticles of this incorporation, the laws of the State or the laws of the United States.
article Sixth.
This corporation shall continue to exist for the term and space of ninety-nine years from the date hereof,unless sooner dissolved by theconsent of the members, hereof.
(Signed) IMMER BALL, Witness. his (Signed) JAMES x SOUTHERN, mark,
“ \V. H. FOSTER,’ “ o his “ ARCHIE x BALDWIN, mark,
" W. II. FOSTER, his “ PHILIP x JINKS.
“ W. IL FOSTER, “ mark. his “ SAMUEL x RUSSELL.
“ W. II. FOSTER, “ “ EMANUEL^x HALL.
“ W. IT. FOSTER, “ “ W. II. FOSTER, “ “ JOHN JONES.’ “ J. C. OLIVIER, JR.
“ I, the undersigned District Attorney of the parish of Orleans and city of New Orleans, State of Louisiana, do hereby certify that I have examined the foregoing form of charter, and find the articles thereof in all particulars according to law, and hereby approve the same and admit it to registry, whereby it will become a legal act of incorporation and charter of the trustees of the Seventh Street Church of the i olo.red Methodist Episcopal Church in America.
“ New Orleans, April 8,1881.
" (Signed) • JOHN J. FINNEY.