(139 So. 322)

**Succession of GAUTHREAUX.**

No. 31231.

Jan. 4, 1932.

John A. Woodville, of New Orleans, for appellants Victor Serpas et al.

McLoughlin & West, of New Orleans, for appellees Bernard Thrain et al.

ODOM, J.

Mrs. Memmel died at her residence in New Orleans on April 3, 1930, leaving a small estate which she disposed of by last will and testament in nuncupative form by public act.

Upon application of Bernard Thrain, the executor named by decedent, the court ordered that the will be registered and executed, that the executor be confirmed, that letters testamentary issue to him, and that an inventory be made.

This suit was brought by certain relatives of the deceased not named in the will who pray for judgment "declaring null, void and of no effect the last will and testament of the decedent Alicia Memmel."

Their demands were rejected, and they appealed.

As grounds of nullity, plaintiffs allege that the document purporting to be the last will and testament of Mrs. Memmel was not dictated to the notary in the presence and hearing of the witnesses as required by law; the witnesses named were not present when the will was prepared; that the will was not the free voluntary act of decedent; that Mrs. Wiefel, one of the witnesses, prepared a memorandum from which the notary wrote the will; and that the will is contradictory and misleading, in that it is recited in one part that the testatrix declared that she could not sign her name because of poor eyesight, and in another part that she signed.

Not one of these allegations is borne out by the testimony. The notary who prepared the will and the five witnesses who signed it were called as witnesses and testified. According to their testimony, the testatrix, Mrs. Memmel, while lying in bed, dictated the will to the notary, who sat at a table beside the bed and wrote it as dictated; that, after the will was written by the notary as dic-

tated, the notary read it aloud in the presence and hearing of the testatrix and of the witnesses; after which reading, the notary asked the testatrix if that was her will, and she answered that it was. The testimony shows beyond question that all of the witnesses who signed as such were present during the entire time; and, while there is no allegation to that effect, yet it is argued in brief and the testimony shows that one of them was partially deaf and probably did not hear what was said.

■ This witness, Mr. Wiefel, testified that he heard all that was said. But from the fact he had considerable difficulty in hearing and understanding what was said to him in court by the judge and by counsel, we conclude that he probably did not hear all that was said by the testatrix or the reading of the will by the notary. We therefore concur in the view expressed by counsel for plaintiff that Mr. Wiefel was not a competent witness to the will.

■ But the will is not void on that account. Five witnesses, including Mr. Wiefel, were present and attested the will. The other four were competent. Only three witnesses were necessary.

"The nuncupative testament by public act must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place." Civ. Code, art. 1578.

The witnesses all resided in New Orleans, the place where the will was executed. The fact that one of the five witnesses to a will is incompetent, when only three are necessary, does not render the will invalid.

Mrs. Pauline Fisse, who was called as a witness by plaintiff, testified that she was present when the will was made, and that some of those who signed it as witnesses were not in fact present. The testimony abundantly shows, however, that Mrs. Fisse herself was not present.

The facts are that Mrs. Memmel made two wills; one on the 11th, and the other on the 14th of December, 1929. The same notary officiated in each case. Mrs. Fisse was present when the first but not when the last one was made, and it was the last one which was registered and executed. She was therefore sincere, but mistaken, when she testified that those who attested the will were not actually present when it was made.

The second will was made at the suggestion of the notary, who discovered after the first one was drawn that the witnesses to it, or some of them, were not residents of New Orleans, the place where it was made. She called Mrs. Memmel's attention to this irregularity; hence the second will before other witnesses.

■■ The last contention made is that the will is contradictory and confusing in that it is stated, in one part, that the testatrix could not sign because of poor eyesight, and in another part that she did sign. The facts are that the testatrix could not write her name because her eyesight was poor, but she did sign it by making her mark.

The will recites that, after it was written, the notary requested the testatrix to "sign or write her name to these presents, the said testatrix declared unto me, notary, in the presence and hearing of said aforenamed witnesses that she could not sign or write because of poor eyesight."

It is not essential that a testator write his own signature to a will of this kind. But "if he declare that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him

from signing, must be made in the act." Civ. Code, art. 1579. The notary followed the letter of the law in this case.

The will closes with this declaration:

"Thus done and passed at one time, without interruption or without turning aside to any other acts, in said room, on the day, month, and year first above written, in the presence and hearing of said five aforenamed witnesses, who hereunto *sign their names, together with the testatrix* and me, notary, after due reading of the whole." (Italics ours.)

The declaration in the will that the testatrix signed it is not inconsistent with or contradictory of the statement that she could not write because of poor eyesight. One who is unable to write may nevertheless affix his signature to a will or other instrument by making his mark.

"Where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own and is sufficient to give the same validity to an instrument as though written by the person himself. * * * In the absence of a statute defining the term 'signature,' when a signature is necessary to give authenticity to an instrument, a signature by mark is sufficient." 36 Cyc. 451, 452.

We have not found any statute of this state defining the term "signature," but in numerous decisions, our court has recognized the ordinary mark of a person as being his signature.

In Watts et al. v. Collier, Sheriff, 140 La. 99, 108, 72 So. 822, 825, the court said: "It is well settled in our jurisprudence that the ordinary mark of a person, incapable of writing, when established by legal evidence, is to be taken as his signature"—citing Tagiasco et al. v. Molinari's Heirs, 9 La. 512; Madison

v. Zabriski, 11 La. 247, and Board of Trustees v. Campbell, 48 La. Ann. 1546, 21 So. 184.

As to signature by mark to wills, see Brand v. Baumgarden, 24 La. Ann. 628, Hennessey's Heirs v. Woulfe, 49 La. Ann. 1376, 22 So. 394.

The judgment is correct, and is affirmed, with all costs.