SOMMERVILLE, J.
The property involved in this case is known as the Hester plantation or tract, in Madison parish, which passed into the possession of Dr. H. Frizell, of Mississippi, burdened with a vendor’s lien represented by a note for $20,000. Dr. Frizell sold to G. W. Simmons, of Memphis, Tenn., with full warranty, for about $35,000, represented by notes bearing upon the property as a second mortgage. Simmons sold to J. J. Gehlhausen, of Madison parish, with full warranty, and the latter assumed the payment of the $35,000 of notes given by Simmons, his vendor, as the purchase price. Gehlhausen is one of the defendants in the first of these consolidated cases.
While Simmons' was owner, he placed a small mortgage on the property, evidenced by a note held by R. H. Fitzgerald, who is the real defendant in these cases.
Joel F. Johnson, of Mississippi, is the real plaintiff, although the first suit was brought in -the name of Geo. S. Xerger, of Madison parish.
Prior to the filing of these consolidated suits, Johnson became the owner of the note for $20,000, reduced to about $9,000, which was secured by vendor’s lien on the property, and he caused executory process to issue thereon in the name of his son, Joel F. Johnson, Jr., July 11, 1911.
This note was taken up by defendant Fitzgerald, the junior mortgage creditor, and execution thereon was stayed.
Johnson subsequently bought from Dr. Friz-ell the notes for $35,000, which the latter had received from Simmons as the purchase price of the plantation or tract.
The first of these consolidated suits is by Johnson, the second mortgage creditor, who sues via ordinaria Simmons and Gehlhausen, the two last successive owners of the property, on the notes issued by Simmons to Dr. Frizell in payment when he bought the property, and which were assumed by Gehlhausen when he bought from Simmons, and plaintiff asks for judgment against these two defendants for the amount of the notes, and for recognition of the vendor’s lién and privilege.
Since the institution of the first suit now before the court, Johnson became the owner and possessor of the first mortgage or vendor’s lien and note for the second time, and he again caused executory process to issue thereon. He was the purchaser at the sale, and he is now the owner of the plantation, without certain standing timber thereon. (This timber had been sold by Simmons to Fitzgerald, and the latter had enjoined the sale of the timber by Johnson in this last ex-ecutory proceeding.)
Gehlhausen’s defense is that he bought the property with full warranty of title from Simmons, his eodefendant, who in turn bought with warranty from Dr. H. Frizell, and that Dr. Frizell was the holder and transferrer of the second mortgage notes sued upon by Johnson.
It is only to be observed in connection with these transfers of the property that title passed with full warranty from these successive owners, without declaring, at the time of the sales, the existence of a prior vendor’s lien, and it follows that the present owner of the property, Johnson, who purchased at a sale under that prior lien and mortgage which was warranted against, cannot collect from the last vendee, Gehlhausen, the price which the latter agreed to pay for the property. Johnson cannot take the property and the price too. When Simmons bought with full warranty of title, and gave *283 his notes for the purchase price to Dr. Friz-ell, and the property was subsequently taken from him by the holder of a first mortgage, he does not owe the price to his vendor, Dr. Frizell; and Johnson, who acquired the notes sued upon from Frizell, the vendor who sold to Simmons, only acquired the rights which Frizell held. Frizell could not recover from Simmons on these notes; neither can his vendee, Johnson, do so. And the lien, privilege, and mortgage securing these notes fall with them, and execution on them as to the timber will remain suspended until the end of the year 1916, unless a certain timber contract, which will be noticed later in this opinion, is sooner set aside.
The suit against Simmons appears to have been correctly disposed of by the trial judge, who did not render judgment against him, and-Johnson has acquiesced in the judgment, for he has not appealed.
But Gehlhausen, codefendant with Simmons, who' purchased the plantation from Simmons and assumed payment of the notes issued by Simmons for the purchase price, and who stands in the shoes of Simmons as to these notes, has been condemned to pay said notes, although he has been deprived of the property for which they were given. He (Gehlhausen) did not sell the Simmons’ notes to Johnson, or receive any of the selling price thereof. The judgment against Gehlhausen will be reversed.
While Simmons was owner of the property he sold the standing cottonwood timber on certain parts thereof to R. H. Fitzgerald, of West Carroll parish, September 8,1911. This contract provided that Simmons, the vendor, should build a sawmill for the use of Fitzgerald; but this stipulation was formally waived by a subsequent contract, and Fitzgerald built the mill. It was agreed “that, this contract shall continue in force for one year from the date operation of the mill is commenced.” The mill began to be operated March 16, 1912, and the contract- covering cottonwood timber was to have expired on March 16,1913, after this suit was filed. The price of the timber was fixed, and $500 were paid by Fitzgerald to Simmons on the price of the timber. The balance, at the rate of $2.50 per thousand log scale, was “to be paid on all cottonwood as logs pass through mill; payments to be made every thirty days after operation is commenced. All balance due under grades and prices above specified, if any, to be paid when lumber is loaded on cars, * * and in any event (Simmons was) to receive a minimum price of not less than $2.50 per thousand feet on all logs. The cash payment hereunder is to be considered as. a credit on said logs at the rate specified until consumed.”
The contract also contained an option given to Fitzgerald to purchase certain merchantable ash, oak, gum, and elm timber standing on the place at prices therein fixed, which timber was to be cut by April 1, 1916, and removed within nine months thereafter. This option was accepted June 1, 1912.
It was further stipulated “that one-half of all moneys coming to the said Simmons under this agreement shall be paid over to Dr. Horton Frizell, or to the legal holder or holders of the mortgage notes described in, and secured by,” the act of sale from Frizell to Simmons. And the “agreement was conditioned upon the ratification by the said Frizell, or other holders of said notes, and of Mrs. M. O. Ludeling, or the legal holder of that certain mortgage note for $20,000” hereinbefore referred to.
Dr. Frizell, vendor and holder of the second mortgage notes, ratified the contract on September 16, 1911, and the notes held by him were paraphed to identify them with the timber contract of sale. Mrs. Ludeling did not ratify it, and the parties to the contract waived that provision with reference to ratification by her. Dr. Frizell September 26, *285 1911, guaranteed Fitzgerald against loss and damage from any interference by Mrs. Ludeling.
In the act of ratification Dr. Frizell consented and agreed “to the sale of said timber, as therein provided, provided that payment is to be made to him of one-half of all moneys due, as provided in said act of sale, or to the bona fide owner or holder of said notes,” referring to the second mortgage notes for $35,-000 held by him, and now owned and sued on by Johnson.
The parties to the contract executed same, with the modifications stated, and the mill began to be operated March 16, 1912, and continued until the flood from the river stopped the mill for several months.
July 19, 1912, Simmons, by public act, declared that, having received the $500 mentioned in the contract, having been released from the obligation to build the mill (which would have cost several thousand dollars), and for other considerations received by him, “he fully and completely ratified and accepted the same in all of its parts and clauses,” and declared “that the said Fitzgerald has fully and completely done and performed any and every act required and exacted of him under the terms of said agreement.”
And to this time the parties to the agreement have recognized it to be of full force and effect; and no one of them is before the court complaining of, or asking for relief from, it.
Joel F. Johnson, Sr., a stranger to the contract, as the holder of the second mortgage, on September 28, 1912, attacked the contract, and asked that it be avoided and set aside. He alleged that it contains a condition precedent, which has never been complied with; that Fitzgerald has not paid the sums due by the terms of the contract; and that the land upon which he (Johnson) has liens, privileges, and mortgages is being destituted of the timber thereon, to his great loss and damage. He sued out writs of injunction and sequestration, and asked further that Fitzgerald account for the timber sawed and sold by him; that he have a money judgment against Fitzgerald; and that the land and timber be sold to satisfy his claims.
Fitzgerald answered denying the allegations of Johnson, and, reconvening, asked for damages for the wrongful issuance of the writs of injunction and sequestration. He also sued out a writ of injunction to prevent Johnson from interfering with the cutting and sale of the timber covered by his contract with Simmons.
There was judgment in favor of Johnson, decreeing that the land and standing timber be seized and sold under' the second mortgage which had been transferred by Frizell to Johnson; that Fitzgerald be enjoined from cutting timber; that Johnson have judgment against Fitzgerald for $3,292.68 and for $1,-598.68. There'was further judgment in favor of Fitzgerald and against Johnson sustaining writs of injunction sued out by Fitzgerald, dissolving writs of injunction and sequestration sued out by Johnson, and a money judgment in favor of Fitzgerald for $750, $100, and $300.
Fitzgerald has appealed, but Johnson has not, and no amendment of the judgment has been asked for.
[1-3] The Hester plantation was seized under executory process in the suit numbered 1814, in the consolidated suits before us. The sale of the timber was enjoined by Fitzgerald in suit numbered 1832, and the land, without the timber, was sold to Johnson, the seizing creditor, December 28, 1912. •
The land is now the property of plaintiff Johnson, and certain timber, at the time of suit in the trial court, belonged to defendant Fitzgerald under the contracts for cottonwood timber, expiring March 16, 1913, and for other timber, expiring in 1916.
The timber was ordered sold in the judg *287 ment appealed from against Gehlhausen. Gehlhausen cannot be held on the notes sued upon, and that judgment will be reversed in its entirety.
The allegation by plaintiff Johnson that the timber contract entered into between defendant Fitzgerald and Simmons, the owner of the land when the contract was made, and which was ratified by Frizell, the holder of the second mortgage, contains a condition precedent, which condition has ' not been performed, is not supported by the evidence.
The pertinent terms of the contract have been already given, and it (the contract) contains but one condition which was required to be executed before the contract was to go into effect, and that was “the ratification of the said Frizell * * * and of Mrs. M. O. Ludeling.” But this was net something to be done by Fitzgerald; it was a stipulation in his favor. Dr. Frizell ratified the contract by public act, and the ratification by Mrs. Ludeling was waived on the giving of a guarantee by Frizell to Fitzgerald.
Plaintiff argues that Dr. Frizell, in his act of ratification, added another condition precedent, when he, after consenting to the sale of the timber by Simmons to Fitzgerald, added or rather took from the original act of sale this provision, “Provided that payment is to be made to him (Frizell) of one-half of all moneys due, as provided in said act of sale, or to the bona fide owner or holder of said notes,” referring to the holder or owner of the $35,000 of notes then held by him, and now owned by Johnson. But this proviso is not a condition precedent to be performed by Fitzgerald before the contract was executed. The contract became absolute and obligatory by the terms embraced in it. Fitzgerald was to go into possession of Hester plantation for one year, erect a sawmill thereon, fell, and saw timber, and, “every 30 days after operation is commenced,” pay to Simmons one-half and to Dr. Frizell one-half of $2.50 per thousand log scale “as logs pass through the mill,” and “the balance, if any, to be paid when lumber is loaded on cars,” after the cash payment of $500 made at the time of signing the contract had been exhausted. These terms clearly give a right to sue to annul or for damages for breach of the contract; but the intention of the parties is so plainly expressed in the language used by them, and the nature of the contract is such, that it is' clear that the parties did not agree to suspend the contract until some condition happened. 8 Gyc. 558. No portion of the price was to become due by Fitzgerald until after he ■ had executed the contract to the extent of entering upon the land, building a mill, felling the timber, and passing the logs through the mill. And this construction has been given by all of the parties to the contract during its existence. Simmons has declared by public act that Fitzgerald has complied fully with his obligations under it; and there is before the court only a third person setting up that it contains a condition precedent which has not been complied with, and that the contract is without effect. The contract was effective from its date.
Plaintiff asks, in the alternative, if there is a contract, that it be set aside for nonperformance; for the reason that defendant Fitzgerald has not paid the price “every 30 days after operation (of the mill) was commenced.” The evidence shows that the mill was run for some time, but was stopped for several months in the summer of 1912, on account of a flood; that operations were resumed after the flood subsided; that the $500 advanced as a portion of the price was not exhausted for some time; and that subsequently the price was offered to plaintiff or his attorney, and that they refused to receive it, and that it was deposited as *289 it fell due in bank for whomsoever might.be entitled to receive it. The price is not sued for in these consolidated cases. The contract should not have been annulled.
Johnson obtained an injunction to prevent Fitzgerald from cutting under the timber contract, on the allegation that he was the owner of the $35,000 of second mortgage notes bearing on the property, which notes he had acquired from Dr. Frizell; that Fitzgerald was damaging the property mortgaged; and that the timber contract was void, or should be avoided.
The evidence shows that when Johnson acquired the notes from Dr. Frizell he took them with full notice that Frizell had sold the property to Simmons; that Simmons had sold the timber here in dispute to Fitzgerald; that Dr. Frizell had ratified the sale of the timber and was bound by the terms of the contract; that the notes sued upon by plaintiff were paraphed to identify them with said contract; that all of these contracts were spread upon the public records of the parish; and that he was otherwise fully informed as to them. He acquired no greater rights than his vendor, Frizell, had. He was therefore without right to enjoin the execution of the contract which his vendor had publicly ratified, which contract had not been transferred to him to any extent, except to receive the price falling due thereunder every thirty days, or to enforce compliance with its terms. The writs of injunction should have been dissolved, and the writs under which the timber had been sequestered should have been set aside.
The record discloses a determined effort on the part of Johnson to get possession of the timber on the Hester plantation for his own purposes, and a reckless resort to the processes of the court to gain his object. The several writs issued at his instance have interfered with Fitzgerald in his operations to a very serious extent, although these writs were all bonded by Fitzgerald. Mill crews were stopped from working and were dispersed, and there is some testimony that profitable sales of lumber were defeated; but there is not ’sufficient positive evidence in the record upon which to base a fixed sum for loss and damage suffered by Fitzgerald. The amounts fixed by the trial judge, from which part of the judgment no appeal was taken, will be affirmed.
The evidence as to the amount and value of the timber cut by Fitzgerald under his contract involves intricate calculations, and it is insufficient to base a judgment upon.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is reversed in so far as it is in favor of Joel F. Johnson, Sr., and against J. J. Gehlhaus.en and R. H. Fitzgerald, and it is affirmed in so far as it is in favor of R. H. Fitzgerald and against Joel F. Johnson, Sr., with recognition of the right of Fitzgerald to proceed with the execution of his timber contract with Simmons. The several suits filed by Johnson, or in his behalf, original and by way of intervention, together with all pleas filed by him, against Gehlhausen and Fitzgerald, are dismissed, with costs to be paid by him in both courts.
The right is reserved to Joel F. Johnson,Sr., to demand an accounting from R. H. Fitzgerald under the timber contracts entered into between the latter and G. W. Simmons, of dates September 8, 1911 and June 1, 1912, and to sue for the amounts which may be found to be due.
O’NIELL, J., takes no part, not having heard the argument.