## No. 3204

### Second  Circuit

---

## FERRIDAY COOPERAGE CO. v. PORTER

---

(May 22, 1928.  Opinion and Decree.)

---

(*Syllabus  by  the  Editor.*)

1.  **Louisiana  Digest—Timber—Par. 1, 3, 6.**
Where contract of purchase of small timber allows four years for vendee to remove it, failure of vendee to remove all of it before the expiration of the four years period, attributable to his own fault or negligence forfeits his rights under the contract.

2.  **Louisiana  Digest—Timber—Par. 1, 3; Obligations—Par. 99, 100, 125;. Estoppel —Par. 37.**
One who has himself considered a contract binding and partially executed it cannot thereafter claim the contract void for want of mutuality.

Appeal from the Seventh Judicial District Court, Parish of Concordia.  Hon. R. M. Taliaferro, Judge.

Action by Ferriday Cooperage Company against Samuel Porter.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Dale, Dale and Dale, of Vidalia, attorneys for plaintiff, appellant.

L. T. Kennedy, of Vidalia, attorney for defendant, appellee.

ODOM, J.  In the month of February, 1919, the defendant, Samuel Porter, sold to plaintiff, Ferriday Cooperage Company,

"* * * all small timber not merchantable as logs on the cut over lands of the McQueen and Brabston plantations in Concordia parish, Louisiana; it being expressly understood that said vendee shall not enter for' the purpose of removal or remove any of said timber from said cut over lands until all of the merchantable logs have been removed therefrom."

The consideration for the sale was $1000.00; $400.00 cash, and the balance in three installments of $200.00 each, represented by notes which were paid.  .

The contract is in writing and contains this stipulation as to time for removal:

"Four years is allowed to remove said timber."

The Cooperage Company, plaintiff here, went upon the land shortly after the contract was signed and removed twenty-five cords of bolts worth $25.00.  On September 27, 1926, it brought this suit to recover the sum of $975.00, the balance of the purchase price paid for the timber after deducting the value of the bolts removed, and set up as a cause of action that about the time it had removed the twenty-five

cords of bolts from the land, said Porter, its vendor, notified it to stop cutting and it did so, and that up to the date of the filing of the suit it had not removed any more of the timber because the defendant, Porter, had not removed from the land the merchantable timber which he reserved, and refuses to permit plaintiff to remove its small timber until he, Porter, removes the merchantable timber; that under the terms of the deed it is—

"* * * expressly understood that said vendee shall not enter for the purpose of removal or remove any of said timber from said cut over lands until all of the merchantable logs have been removed therefrom."

That said Porter, by failing to remove the merchantable timber from the land, and by refusing to permit it to go upon the land and remove its timber until the merchantable timber is removed, has made it impossible for it to get its timber, and that he should therefore refund the balance of the purchase price.

In a supplemental and amended petition, plaintiff asked that, in case the court should hold that it had a right to force defendant to remove his timber in order that it might enter the land, then the court should fix said time and suggests that six months would be reasonable; and further alleged that in as much as there was no obligation on the part of defendant to remove his timber

"* * * therefore it may be that said contract contains a potestative condition, and is null ab initio; or that said contract is null for lack of mutuality; and in either event plaintiff is entitled to recover from defendant the sum of $975.00."

And it prays for judgment holding that defendant has violated his contract with plaintiff by not removing all the merchantable logs from said cut over land a suffi-

cient time prior to four years from the date of the contract to enable plaintiff to cut and remove all its timber.

The defendant, in answer, especially denied that he had prevented plaintiff from removing its timber from said lands within the four years stipulated for its removal, and alleged that he had not refused plaintiff access to the land for such purpose, and that plaintiff, having failed to remove its timber from the land within the prescribed time, had forfeited its rights under the contract.

The lower court rejected plaintiff's demands and it appealed.

## OPINION

Regardless of any other issues which may have been injected into the case, if plaintiff failed to remove its timber from the land within the four years period given for such removal, it had lost its rights under the contract long before this suit was filed, if such failure is attributable to its own fault or negligence. It is settled that after a timber contract has been broken by failure to remove the timber within the time fixed in the contract for the removal, the vendee has no further rights.

St. Louis Cypress Co. vs. Thibodeaux, 120 La. 834, 45 South. 742.

Sullivan vs. Louisville Ry. Co., 106 La. 414, 55 L. R. A. 530.

Savage vs. Wyatt Lumber Co., 134 La. 627, 64 South. 491.

Yerger vs. Simmons, 136 La. 280, 67 South. 3.

The testimony warrants the holding that plaintiff's failure to remove the timber was not due to any interference on the part of Porter, the defendant, but was

due to plaintiff's neglect. Plaintiff entered upon the land at one time and cut and removed therefrom a small portion of the timber which it had purchased, and one of plaintiff's witnesses, Mr. Brothers, says his men were stopped by Mr. Fatheree, who represented Porter. But Mr. Brothers was asked:

"Did Mr. Fatheree tell you why he wanted these cutters to stop cutting at that time?"

And he answered:

"My recollection is that we were cutting timber that was over-size."

And, again:

"He told you to quit because you were cutting timber that was larger than that you had bought?"

And he answered:

"Yes, sir."

The same question was repeated and the same answer was given.

It is clear, therefore, that the objection made by Porter to plaintiff's cutting timber was upon the ground that the timber being cut did not belong to plaintiff. This witness knew of no other occasion on which Porter interfered.

Mr. L. H. Brothers, another witness, was called for plaintiff, and he was asked if Mr. Porter or Mr. Fatheree had ever told him personally to quit cutting timber, and he said they had not, and was then asked:

"Is the only incident you know of the one related by your brother, to-wit: that he went down on the train with Mr. Fatheree, and Mr. Fatheree told him your cutters were over the line and were cutting merchantable timber and that you must stop, is that the only notice you know of?"

And he answered:

"Yes."

He was then asked if after that he went to see Porter personally about the matter, and he said he had not.

This witness, L. H. Brothers, who, it seems, was manager for plaintiff, did say, however, that he had been to Porter a number of times during the period of four years and asked him for permission to cut, and if the merchantable timber had been removed so that he could cut, and that Porter informed him that he, Porter, was not ready for plaintiff to enter the land.

But Porter emphatically denied this, and said that the only times Brothers had ever mentioned the matter to him was more than four years after the date of the signing of the contract, and after plaintiff's rights had expired. Brothers, he said, met him in Natchez and asked for a copy of the contract. He says that at that time he told Brothers that the time for removal had expired. Later on, he said, Brothers had spoken to him about the matter.

We think Mr. Brothers' memory is somewhat hazy about the matter, for he was asked over and over again to specify the places where and the dates on which he had spoken to Porter, and he could specify only one, and that, he said, was in Natchez, Mississippi, in the office of Mr. Gurd and that Gurd was present. Gurd was called as a witness and said Mr. Brothers was mistaken—that no conversation had taken place between Porter and Brothers in his presence, in his office or elsewhere.

This witness, Brothers, made it clear that plaintiff was notified only one time to quit cutting and that was the time it was accused of cutting timber which admittedly it did not own. He said they did not go back to cut any more. On page 30 of the testimony, he was asked:

"Did you do anything about going down there and cutting the small timber?"

And he said:

"We did not do anything more. I mean I did not."

Asked if his company did anything, he said:

"My brother did."

Presumably this witness referred to A. J. Brothers, who testified that plaintiff was ordered to stop cutting merchantable timber, but he gave no intimation that they were stopped at any other time, or that they ever did anything else looking to the removal of the timber.

But Porter and Fatheree swore that they had never refused plaintiff permission to cut and remove timber off the cut over lands.

The testimony shows that there is some merchantable timber yet on the land, but how much is not shown. Fatheree did say, however, that at the time the contract was made all the land had been cut over, except about 600 or 700 acres. If there was any reason why plaintiff could not have removed its timber from part already cut over it is not shown.

Plaintiff's witnesses said they had not been notified by Porter to remove the timber. That was not necessary. Plaintiff had bought the timber and it was its duty to look after its own interests and get the timber off. If Porter had interfered, it had its remedy.

Our conclusion is that plaintiff has lost its rights under the contract through its own neglect.

As to plaintiff's contention that the contract is void for want of mutuality, we have only this to say. Plaintiff itself considered the contract binding and partially executed it by going upon the land and removing therefrom a small portion of the timber.

The judgment appealed from is affirmed with costs.