(91 South. 431)

No. 23721.

## GLASSELL v. RICHARDSON OIL CO. et al.

(March 13, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals ⬥58—Lease held not null for want of valid consideration or mutuality.**

An oil and gas lease of land which was part of a group of leases of unproven land in which speculative wells were to be drilled, stated, as the consideration thereof, that lessee was bound to commence a well in the unproven territory within 90 days, or the lease would become null and void, and if a well was begun within 90 days granted lessee 18 months from date of the lease to start a well on lessor's land, with a privilege to extend the time of forfeiture in this event two years on payment of quarterly rent, and provided that, if the first well should be a dry hole, a salt water well, or a well not producing oil or gas in paying quantities, lessee might start a second well within 60 days from date of completion of the first well, and extended the time of drilling to 18 months from completion of the second well. *Held,* that the contract contemplated development of lessor's property, and obligated lessee to make the development within the time expressed, or pay the rentals provided for, and was not null and void for want of a valid consideration or mutuality, regardless of a clause that on discovery of oil or gas the lease should be in effect 25 years, and as long as oil or gas should be discovered in paying quantities, since this clause meant discovery of oil or gas on lessor's premises.

2. **Mines and minerals ⬥78(2)—Lease construed to required payment of rentals to prevent forfeiture of lease within 18 months from completion of a second well.**

Where a lease in one clause provided that on completion or abandonment of the first well, in a specified tract containing a group of leases lessee should have 18 months from March 9, 1916, the date of the contract, to begin drilling on lessor's land, but in another clause it was agreed that if the first well should prove a dry hole, etc., the lessee might bore a second well, if he began it within 60 days from completion of the first, and that "the time of drilling on this lease is extended to eighteen months from the completion of the second well," and a still later clause, referring to the preceding clause, extended the lease by payment of rent

if drilling could not be begun within 18 months "as above specified," it was held that the time for drilling on lessor's land was to be within 18 months from completion of the second well, and where that well begun within 60 days from completion of the first was completed in February, 1917, a deposit of rent in July, 1918, was within the 18 months, and served to extend the lease.

3. **Contracts ⬥153—Each provision to be given effect.**

A construction which entirely neutralizes one provision of a written instrument should not be adopted if the contract is susceptible of another, which gives effect to all of the provisions.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by John Glassell against the Richardson Oil Company and others. From judgment rejecting plaintiff's demand, plaintiff appeals. Affirmed.

Hall & Bullock, of Shreveport, for appellant.

J. C. Pugh, of Shreveport, for appellees.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

THOMPSON, J. This suit is to annul an oil and gas lease, and in the alternative to have the said lease declared forfeited for failure of the lessee or his assigns to comply with the conditions and stipulations of the lease.

The lease covers 400 acres of land, and was executed by plaintiff in favor of J. W. Dixon on March 9, 1916. Dixon assigned the lease to the Richardson Oil Company, and the latter conveyed the mineral rights in certain defined portions of the land to the other defendants named in the petition. The suit is brought against the Richardson Oil Company and each of its assigns, but Dixon was not made a party. No objection seems to have been made to that fact.

The vices alleged as being inherent in the lease are that there is lacking that mutuality

of obligation required to make the contract commutative, and that it is protestative in character, in that it attempts to bind petitioner, and does not bind or attempt to bind the lessee or his assigns to develop the property. It is alleged, as a reason for declaring the lease forfeited, that the whole consideration for said lease was the development of the property for oil and gas, within 18 months from March 9, 1916, and that neither Dixon nor any of his assigns have ever commenced the drilling of a well for oil or gas on said property, and that the time (18 months) stipulated for that purpose has expired.

It is alleged further that said Dixon and his assigns have not paid petitioner any rental whatever on said property, and that the consideration for making said contract has wholly failed.

It is not alleged that there was no valid or legal consideration for the lease, nor that the consideration was inadequate or not serious.

The defendants, in their answer, admit that no well for oil or gas had been drilled or even commenced on the plaintiff's land, but they affirm the legality and binding effect of the lease, and specially allege that the Richardson Oil Company had fully complied with all of the terms and conditions of the lease and had made all of the payments for rental, called for by the lease within the time and in the manner provided for in the contract.

There was judgment rejecting the plaintiff's demand, and he brings up this appeal.

We copy only such parts of the lease contract as have a pertinent bearing on the issues to be determined. They are:

"The consideration of this lease is as follows: The party of the second part binds himself, his heirs and assigns, that he or they will commence operations for the drilling of a well for either oil or gas within ninety days from this date, said well to be drilled for oil or gas shall be situated in territory which has not been proven to contain oil or gas, and more particularly described as being in townships 20 and 21 north, range 14 west, Caddo and Bossier parishes."

"In case operations for either the drilling of a well for oil or gas, is not commenced and prosecuted with due diligence within ninety days from this date, then this grant shall immediately become null and void as to both parties."

"It is further provided that in case said operations for the drilling of a well for oil or gas is commenced by party of the second part or his assigns within the above-specified ninety days, then in that event party of the second part shall have eighteen months from this date within which to commence the drilling of a well for oil or gas on the land described herein in this lease."

"In case the first well drilled as above specified should come in a dry hole or a salt water well or a well not producing oil or gas in paying quantities, in that event the party of the second part shall have the privilege of starting a second well in an effort to find oil or gas in paying quantities within the territory above described; said well, however, shall be started within sixty days after the completion or abandonment of the first well, and should said second well be started as above specified then and in that event this lease shall be binding on the party of the first part and the time of drilling on this lease is extended to eighteen months from the completion of the second well."

"It is further agreed and understood that it would be unreasonable to expect immediate development upon all of the lands leased by said second party in townships 20, 21 and 22 north, ranges 14 and 15 west * * * and if the party of the second part or his assigns cannot commence drilling a well on the land leased herein and above described within the time of eighteen months as above specified, the second party may prevent the forfeiture of this lease from quarter to quarter for a period of two years by paying seventy-five cents per acre each quarter for that time or until such well is commenced, and it is agreed that the commencing of a well on the lands described in this lease shall operate as a full liquidation of all rentals under this provision during the remainder of the term of this lease, which payment can be made at the Commercial National Bank of Shreveport, La., or payable direct to the party of the first part."

"The further consideration of this lease is as follows: That the party of the first part leases the lands covered by this contract together with

lands belonging to other proprietors situated in the same townships, the whole covering a large number of acres. All of this land is situated in territory which has not yet been proven to contain oil or gas and the consideration of this lease is recognized to be the grouping together of lands under this contract and similar leases to cover a large number of acres of land, which amount is necessary to justify the expenditures that will be entailed by the obligations herein assumed by the party of the second part."

The land covered by the lease as shown by the face of the contract is located in "wild cat" territory, that is to say, territory outside of and beyond any proven field of oil or gas. The lease is what is known as a "community lease," which contemplates the grouping of contiguous lands of different proprietors, who desire and are willing to have their lands exploited in the hope and with the expectation of receiving the fruits, revenues and benefits to be derived in case oil or gas is discovered. The great expense incurred in exploring such territory is recognized, and in order to secure the development of his own land the owner is willing, under certain conditions, that operations may be commenced and prosecuted on his neighbor's lands or lands within a reasonable proximity to his own.

The plaintiff in his contract expressly granted to the lessee the right, within a certain specified time, to drill on lands other than his own, within the territory named, and he recognized this, and so stated in two of the provisions of the lease, as a valid consideration for having his own land developed. The learned counsel, in their brief, say that there was nothing paid for the lease, but there is wanting any allegation in the petition that there was no legal consideration given or promised in the contract. On the contrary, the petition alleges the non-payment of the rentals provided for in the lease, and for that reason the consideration had wholly failed, thereby recognizing, inferentially at least, that there was, prima-rily, a legal consideration expressed. The whole theory of plaintiff's case is not that there was not a sufficient legal consideration expressed or promised in the contract, but that there was no obligation on the part of the lessee to develop the plaintiff's land for oil or gas.

[1] This court has never held, so far as we are informed, that the boring of a well or wells, within a stated territory, may not constitute a valid consideration for a contract by which an owner is to secure, or may ultimately obtain, the development of his own land for oil or gas where the lessee binds himself to develop the lessor's land within a reasonable time or pays adequate rentals for a limited period to prolong the privilege.

We said on the contrary in Raines v. Dunson, 145 La. 526, 82 South. 690:

"We do not mean to hold that a valid contract cannot be made, in which it may be provided, with the view of developing a new field, that the boring of a well within a specified territory shall be part of a valid consideration, where there is an accompanying obligation to develop the property of the lessor in the event of the discovery of oil and gas, and in which it is provided that such rights may be prolonged for a reasonable time upon the payment of adequate rentals."

In the instant case the lessee bound himself to commence operations for the drilling of a well for oil or gas within 90 days from the date of the lease, on territory specified. He further covenanted that if the first well drilled should come in a dry hole or a salt water well or a well not producing oil or gas in paying quantities, he would start another well within 60 days after the completion or abandonment of the first well, in which event he was to have an extension of time to drill on the plaintiff's land and to preserve this right and privilege for a period of two years on making payments as stated in the contract.

The contract, construed as a whole, con-

templated the development of plaintiff's property, and obligated the lessee to make such development within the limited time expressed in the contract, or to pay the rentals as therein provided.

The lease is unlike the lease in the Dunson Case, cited supra.

In that case as found by the court, the lessor had no right to prevent the boring on lands of other parties, and such boring would be a full discharge of the obligation to drill or to pay rentals, and thereby to tie up the lands of the lessor for a period of 25 years, or indefinitely, making it possible, said the court, to extract all the minerals from the field without requiring the development of the lessor's property. No such contingency is possible under the contract with which we are dealing.

The lessee was obligated to develop the plaintiff's land within a fixed time, to date either from the date of the lease or from the completion of a second well on lands in the prescribed territory, or to pay certain rentals as therein stated for a definite period. It is true there is a provision in the present lease that in case the lessee should bore and discover either oil or gas, then the grant should be in full force for 25 years from the time of the discovery of said product and as much longer as oil or gas may be produced in paying quantities, but this clause, when construed with the entire contract, cannot be restricted to mean a producing well or wells on lands other than those of plaintiff. To so hold would strike down and read out of the contract all of those provisions requiring the development of plaintiff's land within a specified limited time. It is not possible under the terms of the present lease to discharge the lessee's obligation to develop the plaintiff's land and to tie up the same beyond the period fixed in the contract by operations on other lands embraced in the territory, whether such operations were success-

ful in producing oil or gas, or not, unless we should write an entirely new contract for the parties. Our conclusion is that the lease under consideration is not null for want of a valid consideration, nor for want of mutuality.

[2] The alternative demand appears to have been abandoned, as it is not discussed in plaintiff's brief. However, the evidence is undisputed that the Richardson Oil Company commenced the boring of a well on specified territory within the first three-months period, and completed the said well in November, 1916. Within 60 days from the completion of the first well, another was commenced, and it was completed in February, 1917. Two other wells were bored, all of which were on territory specified in the contract, but none of them on plaintiff's land. It is also shown, and is not denied by plaintiff, that payments of rentals were made by depositing the amount to the credit of the plaintiff with the depository, and within the time named in the contract, which had the effect of keeping the lease alive when this suit was instituted, August 26, 1918. The lessee or his assigns had fully complied with the obligations required of them with respect to the drilling and the payments of rentals, if the time stipulated was to begin to run from the date of completion of the second well. The date referred to appears to have been an issue in the lower court, and was ruled adversely to the plaintiff. In the second clause of the contract, it was provided that on the completion or the abandonent of the first well the lessee should have 18 months from the date of the contract (March 9, 1916) to begin drilling of plaintiff's land. But in the third clause, it was agreed that if the first well should prove a dry hole, etc., then the lessee should have the privilege of boring a second well, provided that operations should begin within 60 days after the completion of the first well, and the time for commencing drilling on plaintiff's land

was to be 18 months from the completion of the second well.

When the two clauses are construed together, we think it clear that the time only began to run from the completion of the second well, which was February, 1917. The first deposit was made July, 1918, which was well within the 18 months. The correctness of this conclusion, and that it is in harmony with the intention of the parties to date the extension from the completion of the second well, is evident from the language used in the subsequent clause of the contract, which declares:

"And the time of drilling on this lease is extended to eighteen months from the completion of the second well."

And in a still later clause, the one providing for the payment of rentals, the time is referred to as dating from the completion of the second well, as is made manifest from the following language:

"And if the party of the second part or his assigns cannot commence drilling a well on the land leased * * * within the time of 18 months, as above specified, the second party may prevent," etc.

"As above specified" referred directly to the clause immediately preceding which fixed the time as 18 months from the completion of the second well, and could not have referred to the more remote clause fixing the time as from the date of the contract. The construction placed on the contract by the plaintiff would have the effect of writing out of the contract the third clause.

[3] A construction which entirely neutralizes one provision of a written instrument should not be adopted if the contract is susceptible of another, which gives effect to all of the provisions. Board of Trustees v. Campbell, 48 La. Ann. 1543, 21 South. 184; Lozes v. Segura Sugar Co., 52 La. Ann. 1844, 28 South. 249; Whited & Wheless v. Calhoun, 122 La. 100, 47 South. 415.

The judgment appealed from is therefore affirmed, at the cost of the appellant.