No. 1848
Second Circuit Appeal

R. A. & R. B. NELSON v. R. O. ROY ET AL.

(February 20, 1925, Opinion and Decree)

(*Syllabus by the Editor.*)

1. **Louisiana Digest — Mineral Rights— Par. 6.**
All doubts as to the meaning of an oil lease are construed against the lessee.

2. **Louisiana Digest—Obligations—Par. 81.**
Civil Code, Article 1958, provides, if the doubt or obscurity in a document arises for want of necessary explanation, which one of the parties ought to have given, the construction most favorable to the other party shall be adopted.

3. **Louisiana Digest—Mineral Rights—Par. 10.**
Where the lessee wrote an oil lease and made the stipulations for one-eighth of the oil produced and saved, and "the further consideration of one-fourth of the oil or gas produced from the first well" to go to the lessor, held, that the lessor gets three-eighths of the oil from the first well.

Appeal from the First Judicial Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

This is a suit for the royalty on an oil well. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Foster, Hall & Smith, of Shreveport, attorneys for plaintiffs, appellees.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for defendants, appellants.

ODOM, J. On April 11, 1916, the plaintiffs granted to the defendant, R. O. Roy, an oil and gas lease on some land situated in Red River parish. The defendant, Roy, drilled a well on the land and found oil in paying quantities. The oil was deliv-

ered to the Caddo Central Oil & Refining Corporation, the other defendant in this case, which company is now holding the sum of $787.49, the proceeds of the price of all oil delivered to it, over which there is a controversy between the plaintiffs and the defendant, R. O. Roy. This corporation has no interest in the controversy except to pay this amount to the party adjudged to be the owner thereof. It has tendered the amount in court to be delivered to the proper party and asks to be released from further liability. There is no controversy between this defendant and either of the plaintiffs or the defendant, Roy.

This litigation is the result of a dispute between the Nelsons, as lessors of one-fourth or three-eighths of the oil produced and saved out of the first well drilled on the land. The lessors contend that under the contract of lease they are entitled to receive three-eighths of the oil out of the first well, and the lessee contends that they are entitled to only one-fourth.

The suit, therefore, involves the interpretation of the lease contract insofar as royalties are concerned.

The lease contract, insofar as the same need be quoted, reads as follows:

"That R. B. Nelson and R. A. Nelson 1 * * * in consideration of the sum of one dollar and further considerations named below, paid by R. O. Roy, * * * the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, has granted, bargained, sold and conveyed, * * * unto the party of the second part * * * all of the oil and gas in and under the following described land, * * *"

(Here follow various clauses setting forth the lessee's right to drill the land, to lay pipe lines, etc., etc.)

"* * * Reserving, however, to the party of the first part the equal one-eighth (1-8) of all oil produced and saved upon the premises, to be delivered in gauge tanks on the premises, free of cost to first party. * * * To have and to hold * * * on the following conditions: In case operations for the drilling of a well for oil or gas are not commenced and prosecuted with due diligence within one month from this date, then this grant shall immediately become ipso facto null and void as to both parties; * * *"

The lessee assumes no obligation to drill, but the contract provides that the consideration paid in cash and the other obligations assumed by the grantee shall be held to support and sustain the contract.

At the end of the contract is the following sentence:

"The further consideration referred to above is obligation of second party to deliver to first party one-fourth of all oil or gas produced from the first well bored free of charge in first party's storage tank or in pipe line to which well may be connected."

It will be noted that the last sentence quoted refers only to oil and gas taken from the first well drilled.

Parol testimony was introduced to explain the meaning of the contract insofar as it deals with the pro rata of oil and gas which the lessors were to receive from the first well.

Mr. R. A. Nelson, one of the lessors, says that it was understood that they were to get one-eighth of the oil and gas from all the wells drilled on the property covered by the lease and that inasmuch as the lessee did not want to pay a cash bonus for the lease of 160 acres he was willing to give in lieu of a cash bonus an additional one-fourth of the gas and oil from the first well. He says the matter was fully discussed on the streets of Shreveport by him, his brother and Mr. Roy, the

lessee, and that an agreement to this effect was finally reached.

R. B. Nelson, the other lessor, says:

"The one-fourth was in place of the bonus. Mr. Roy stated at the time that he did not care to pay for a lease. Money was scarce and he would rather give an interest in the well, that is, for the 160 acres, and would give one-fourth additional of an additional consideration."

In other words, it was the understanding that they were to get one-eighth of the oil and gas from all wells, including the first one, and that inasmuch as the lessee paid no cash bonus or rental they were to get an additional one-fourth from the first well drilled in lieu thereof.

On the contrary, Roy, the lessee, as a witness in his own behalf, says that the last sentence in the contract which provides that the "obligation of the second party to deliver to first party one-fourth of all oil or gas produced from the first well" was intended to cover the total royalty the lessors were to receive from the first well; that is, that it was never intended that they should receive one-eighth part of the oil and gas mentioned in the first part of the contract plus the one-fourth part mentioned in the last sentence.

As stated already, the first well was a producer and all the oil was delivered to the Caddo Central Oil and Refining Corporation, the other defendant, and one-fourth of the proceeds thereof was paid to the plaintiffs, but inasmuch as there is a controversy over the question of ownership of the one-eighth thereof between plaintiffs and Roy said corporation refuses to pay the proceeds of the one-eighth to either.

Plaintiffs have sued to recover the proceeds of the one-eighth in this suit.

Referring again to the testimony of the witnesses, it will be noted that plaintiffs say that there was no cash bonus or rental paid for the lease and that in lieu thereto the lessee was to give one-fourth of the oil and gas from the first well and, in fact, otherwise this was an ordinary oil and gas lease.

On the contrary, Roy claims that while the contract covering the 160 acres on which this well was drilled does not recite a cash consideration or bonus, yet, as a matter of fact, there was a cash bonus paid and he explains as follows: These plaintiffs owned 320 acres which they leased to the defendant, Roy, under two separate lease contracts, each contract covering 160 acres. The contract covering the 160 acres drilled on is as stated herein; the contract covering the other 160 acres recited that a cash rental or bonus of $8000.00 was paid. Roy says that the $8000.00 stipulated in the other lease contract was in fact paid for the lease of the entire 320 acres, including the 160 drilled on, and that the reason for having the other lease show the consideration for both is that the Nelsons had other lands i that vicinity which they wanted to lease and that a recital of such a consideration for 160 acres would help them market their other leases.

It will thus be seen that Roy contradicts plaintiffs as to the consideration of the leases.

If the testimony of these witnesses was all we had to guide us we could well say that the preponderance of the testimony is in favor of the plaintiffs and decide the case in their favor.

Turning to the contract itself we find that in its general terms it is an ordinary oil and gas lease contract which contains terms and conditions similar if

not identical with the Form 9 lease used generally in this territory.

Under the general terms thereof the lessee acquired the right and privilege of mining for oil and gas on the land of the lessors and of reducing to possession and ownership those minerals found under the surface with the following reservation: "Reserving, however, to the party of the first part the equal one-eighth (1-8) of all oil produced and saved upon the premises."

This clause is in the body of the lease and is one usually found in such contracts.

Roy, the lessee, says in his testimony that he was paying from twenty-eight thousand dollars for the drilling of wells in that territory, and we may therefore, we think, assume that he is an experienced operator and must have been familiar with lease contracts in general. Besides, he says he wrote the contract in controversy so that we know he was familiar with its terms. He wrote into the contract the clause by which the lessors reserved to themselves the ownership of the equal one-eighth part of all the oil which the lessee had the privilege of reducing to possession.

The lessee, as a witness, says:

"Yes, sir, but I agreed to give an additional one-eighth or a one-fourth on the second lease where no money was paid."

If in fact he had intended to give an additional one-eighth how easy it would have been to say so.

He wrote into the contract, "in consideration of the sum of one dollar and further considerations named below * * * and further consideration hereinafter mentioned;" and further on in the contract, after inserting the granting clause and the various usual stipulations as to rights of way for pipe lines, etc., he inserted this clause:

"Reserving, however, to the party of the first part the equal one-eighth (1-8) of all oil produced and saved upon the premises;" and at the very end of the contract he writes into it this:

"The further consideration referred to above is the obligation of the second party to deliver to first party one-fourth of all oil or gas produced from the first well."

Defendant says that the further consideration was an additional one-eighth of the oil from the first well. But he did not write that into the contract. When he wrote into it the explanation of what the further consideration was he said it was "to deliver to the first party one-fourth of all the oil or gas produced from the first well."

Every contract of this kind must have a consideration to support it. The usual consideration which a lessee gives for the privilege of exploring for oil on the property of a lessor is the cash bonus, the drilling of the land and the payment of the royalty reserved by the lessor.

But this contract is out of the ordinary. There are "further considerations" which are explained in the contract to be "one-fourth of all oil or gas produced from the first well."

It is hardly probable that the defendant, when he inserted this sentence in this contract overlooked the fact that the lessors had reserved to themselves the ownership of the usual one-eighth of the oil extracted from the land, which, of course, would apply as well to the first as to other wells.

According to our interpretation of the contract the lessee should deliver to the lessors not only the one-eighth of the oil reserved by them but, in addition thereto, the one-fourth thereof.

All doubts as to the meaning of a lease of this kind are construed against the lessee.

Reeves vs. Gulf Frg. Co., 133 La. 179, 62 South. 623.

Civil Code, Article 1958, provides, if the doubt or obscurity in a document arise for want of necessary explanation which one of the parties ought to have given, the construction most favorable to the other party shall be adopted.

The defendant wrote this lease contract. If its meaning is obscure he has but himself to blame.

The amount in dispute is $787.49, the proceeds of the sale of the one-eighth of the oil extracted in a given time. The judgment of the lower court is in favor of the plaintiff for that amount.

Not finding any error in the judgment appealed from, it is therefore accordingly affirmed.