UNITED STATES v. CERTAIN PARCELS OF LAND IN RAPIDES PARISH, LA., et al.

Civil Action No. 915.

District Court, W. D. Louisiana, Alexandria Division.

Oct. 25, 1944.

Camden K. Staples, of Alexandria, La., for defendant Mrs. Mattie O. Ball.

Lamar Polk and J. A. Robinson, both of Alexandria, La., for themselves.

PORTERIE, District Judge.

As an incident of the Government's expropriation of property for the construction of the McArthur Drive connecting two large army camps in the Alexandria area, there arises a decision to be made by us of which one of two conflicting claims to the title of one of the smaller tracts of land taken (3.39 acres) is to be declared the legal one.

It having been stipulated by the claimants that the Kent Company, Limited, is the common author in title of such titles as might be pressed by the two parties, it is unnecessary to go beyond the date of that holding.

The title story is that on the 26th day of April, 1913, the Kent Company, Limited, sold and conveyed, by authentic act, unto the Alexandria and Western Railway Company property, the description thereof and the consideration therefor reading as follows:

"* * * for and in consideration of the price and sum of One Thousand and Seventeen and no/100 ($1,017.00) Dollars cash in hand paid, and the further consideration of the advantages and benefits that will result from the building and extension of the Alexandria & Western Railway through their lands and the further consideration of the enhancement in value of the adjoining lands by the construction of said railroad, they do hereby sell, transfer, convey, and deliver, with full warranty of title and subrogation to all rights and actions in warranty against all former owners and free from all encumbrances, * * * the following described property, to-wit:

"A right of way over and across the following described lands, situated in the Parish of Rapides, State of Louisiana, to-wit:

"All that tri-angular portion of ground bounded on the West by Jackson Street, on the South by the lane, on the North and east by a line parallel to and twenty-five feet from the center line of the railway as now located. Also a certain portion of ground having a width of one hundred (100) feet and extending fifty (50) feet on each side of the center line of said railway as now located from Jackson Street to the Heyman property, together with a triangular portion fronting one hundred (100) feet on Texas Ave., all as appears on the plat attached hereto and made a part hereof. Total area now estimated as three and 39/100 (3.39) acres.

"And the further consideration that the said railway company shall provide and thereafter maintain the necessary cattle guards, cross roads, and cross drains, and shall when requested fence the right of way."

At the time of this sale to the Alexandria and Western Railway Company the property traversed by it and now involved here was encumbered with a mortgage in favor of Mrs. Sallie A. Ringgold. The Kent Company paid Mrs. Ringgold a substantial sum of money, in consideration of which payment she released from the effect of her mortgage the land traversed by the property sold.

Shortly thereafter the Kent Company, Limited, became involved financially and, being unable to meet its obligations, was placed in bankruptcy. During the course of the bankruptcy proceedings, C. M. Waters purchased all of the outstanding claims against the company, including a deficiency judgment which had been procured against the company by Mrs. Sallie A. Ringgold. This deficiency judgment was the result of a foreclosure proceeding brought by Mrs. Ringgold against the Kent Company. In the order approving the purchase of the judgment and dismissing the bankruptcy proceedings of the Kent Company, the Court ordered that there be transferred to Mr. Waters all of the monies of the bankrupt estate. Mr. Waters thereafter proceeded to execute on the deficiency judgment purchased by him from Mrs. Ringgold and seized the properties of the Kent Company, Limited, purchasing these properties at a sheriff's sale held on the 3rd day of August, 1918. On the 2nd day of September, 1918, the Board of Directors of the Kent Company, Limited, in consideration of the cancellation of the judgments against the company as held by Mr. Waters sought to convey to him, through the means of a confirmation of the sheriff's sale, all of the properties of the Kent Company, Limited.

During this period of time, the Alexandria and Western Railway Company was operating its railway system over the tracks which had been placed by it on the right of way purchased from the Kent Company.

About in 1926, the Alexandria and Western Railway Company abandoned its operations, removed its tracks from the right of way acquired from the Kent Company and abandoned the use of the property for any purpose whatsoever.

The property at issue was not listed by the Kent Company, Limited, in its bankruptcy proceedings, and Mr. Waters never seized the property under his execution of the judgment he owned; accordingly, at sheriff's sale he did not acquire this property.

There is no evidence to show when Mr. Waters or the Kent Company discovered that the property now in controversy had not been mentioned or included in the various deeds from the Kent Company to Mr. Waters in 1918.

In 1940, Mr. Waters and the officials of the Kent Company, by resolution and by deed, stated that it was the intention of the Kent Company to convey to Mr. Waters, and his intention to acquire, all of the property owned by the company in 1918, and that it was through mutual error and mistake that the property in controversy, which was encumbered at that time (1918) by a servitude in favor of the Alexandria and Western Railway Company, and which was being used by the railway at that time, was omitted in the original deed from the Kent Company to Waters. Accordingly, and in order to remedy the error, mistake, and omission, the Kent Company, Limited, on March 6, 1940, conveyed to Mr. C. M. Waters the following property:

"All that tri-angular portion of ground bounded on the West by Jackson Street, on the South by the lane, on the North and East by a line parallel to and twenty-five (25) feet from the center line of the railway as now located. Also a certain portion of ground having a width of One Hundred (100) feet and extending Fifty Feet on each side of the center line of said railway as now located from Jackson Street to the Heyman property, together with a triangular portion fronting One Hundred (100) feet on Texas Avenue, all as appears on the plat attached hereto and made a part hereof. Total area now estimated as Three and 39/100 (3.39) acres."

During the month of March, 1941, Lamar Polk and J. A. Robinson purchased the property under a general warranty deed from C. M. Waters. Following their acquisition of the property, Lamar Polk and J. A. Robinson had it assessed in their names and have paid the taxes since.

On the 6th day of December, 1943, the United States of America, desiring to use a portion of the property for the building of the McArthur drive near the city of Alexandria, filed the present proceedings, naming the claimants here as purported owners.

Thereafter, Lamar Polk and J. A. Robinson appeared and agreed that the amount tendered by the Government for the property was fair and reasonable, and, accordingly, a judgment was rendered declaring the title of the property to be in the Government and fixing the amount of $280.35 as the compensation to be paid the owners.

On the 6th day of May, 1944, Mrs. Mattie O. Ball, the other claimant, secured

from the Alexandria and Western Railway Company, through its receiver, a quitclaim deed to the property; the quitclaim deed particularly excluding any warranty of title and relieving the vendor from any liability in the premises, even as to the return of the purchase price.

The Government filed a motion for distribution of funds, citing, among others, Lamar Polk, J. A. Robinson, and Mrs. Mattie O. Ball as purported owners of the property.

This ends the statement of the case.

The question before the court now is, to whom shall be paid the funds on deposit in the registry of the court as compensation for the taking of the tract? Or, to put it legally: was the deed, aforequoted, from the Kent Company, Limited, to the Railway Company a sale of a servitude or a sale in fee-simple title?

This is a case where we must consider the jurisprudence of our state fixing the manner of interpretation of this type of land sale, so that we may know which are the necessary and controlling facts, and then we should proceed to a determination of the case.

█ The general legal principles applicable here have been recently considered by the Supreme Court of our state in the case of Rock Island, A. & L. R. Co. v. Gournay et al., 205 La. 125, 17 So. 2d 8, 9, and have been set out in the following language:

"It is well-settled in this State that in deciding whether a fee simple title to land has been conveyed or a servitude or right-of-way thereupon has been granted by a deed, the intention of the parties thereto must be determined from the stipulations in the entire instrument, with a view of giving effect to all of the provisions therein contained and thereby avoid neutralizing or ignoring any of them or treating any of them as surplusage. Noel Estate v. Kansas City Southern & G. R. Co. et al., 187 La. 717, 175 So. 468; Hunter Co., Inc., v. Ulrich, 200 La. 536, 8 So.2d 531; Parish of Jefferson v. Texas Co. et al., 192 La. 934, 189 So. 580; Glassell v. Richardson Oil Co. et al., 150 La. 999, 91 So. 431.

"In the case of Texas & P. R. Co. v. Ellerbe, 199 La. 489, 6 So.2d 556, 557, this Court said:

"'The jurisprudence is well settled that the conveyance of a right of way is to be regarded as a mere servitude and not as a transfer of a fee-simple title of the land unless the deed itself evidences that the parties intended otherwise.

*  *  *  *  *  *

"'In Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., supra, 126 La. 840, 53 So. 22, 23, we said: "A right of way may consist either of the fee, or merely of a right of passage and use, or servitude. Whether the one or the other is meant in any particular instrument must be gathered from the instrument as a whole. As a general rule, only a servitude is meant."'

"In Arkansas Improvement Co. et al. v. Kansas City S. R. Co. et al., 189 La. 921, 181 So. 445, 448, in considering the deed together with the extraneous evidence offered under a plea of estoppel to show that a fee simple title had been conveyed and not a mere right-of-way, the Court, in holding that a fee title had passed, stated:

"'The courts hold generally that a reference to the land involved as "right-of-way" or "for railroad purposes" does not necessarily indicate that the intent was to convey a mere easement or servitude, but that the intention must be ascertained by construing the instrument as a whole, and that in this connection extrinsic evidence may be considered.'

"In Gautreaux et al. v. Harang et al., 190 La. 1060, 183 So. 349, the Court had before it the question of whether or not the provisions of the notarial act of sale created an antichresis. In reaching the conclusion that the parties intended an antichresis, the Court quoted with approval from the case of Rolland's Heirs v. McCarty, 19 La. 77, where it was said:

"'*  *  *  Now we are not to presume that parties make use of words in their contracts to which they attach no sort of meaning. Some effect is to be given to every word, if possible, or rather we are rarely authorized to reject words or phrases as surplusage.' See, also, Clement v. Dunn, 168 La. 394, 122 So. 122."

We have read and we give much weight to the case of Askew et al. v. Vicksburg, S. & P. Ry. Co., 171 La. 947, 132 So. 510.

In the Louisiana cases cited to us by both sides, establishing that as a general rule only a servitude is meant when an instrument conveys a right of way, we have carefully checked that the cash con-

sideration in these cases was generally nothing, or decidedly little, such as $80 or $100. The latter two amounts are found in Rock Island, A. & L. R. Co. v. Gournay et al., supra, and Texas & P. R. Co. v. Ellerbe, 199 La. 489, 6 So.2d 556, respectively.

We need make no further citation of Louisiana cases because the above quotation is fully rehearsive. Therefore, we may safely proceed in the analysis of the facts, and as we consider each set of facts in the narrative of some thirty years, we shall indicate in whose favor they lean and to what degree of weight and sufficiency.

■ A. From a reading of the original instrument of 1913 from the Kent Company to the Railway Company, first, the descriptive language of the right of way indicates a fee title and not a servitude. We have already noted that the law says that the mere designation of property as a "right of way" does not necessarily mean a servitude, but might mean a fee-simple title.

■ B. Leaving the phase of description, there is the cash payment of $1017 for 3.39 acres in the year 1913. How could we say that this payment could be only for a servitude and not in full fee-simple, when in the year 1944 the accepted stipulated worth of the 3.39 acres in fee-simple is only $280.35?

C. The language, "And the further consideration that the said Railway Company shall provide and thereafter maintain the necessary cattle guards, cross roads, and cross drains, and shall when requested fence the right of way," is indicative of the sale of a total fee and not a servitude, because the seller was desirous of burdening the buyer with the proper maintenance of the cattle guards, cross roads and cross drains necessarily erected by the railway company, so that the rest of the property retained by the buyer adjacent to the right of way would not be injured by the want of proper maintenance. The language, "shall when requested fence the right of way," is still more significant of a sale in full title because it is the purpose of the seller to see that the use of its remaining lands for grazing purposes will be unhindered, and prove, also, not to be injurious, in that running trains would not kill its animals.

D. In the face of the substantial first consideration of $1017 plus the above-quoted "further consideration," it is impossible for us to arrive at any other conclusion but that the sale was in full title to the 3.39 acres and not a mere servitude of railroad use and passage.

E. The omission of this property by the Kent Company, Limited, in the declaration of assets in its petiton of bankruptcy is a judicial and sworn avowal of such weight that its subsequent resolution and deed some twenty years later to the effect that there was an error or mistake in the omission of the property in its listing, is of no weight or effect. All of this shades into corroboration of the fact that the sale in 1913 was of the property in fee-simple title.

F. When Mr. Waters purchased all of the outstanding claims of the Kent Company, Limited, during the bankruptcy proceedings, we must assume that he was seeking all of the assets of the Company, and the fact that he failed to have the bankruptcy schedule of assets modified in that this property in full title, less a servitude, would be included, is a quasi-admission by Mr. Waters that the 1913 deed of record conveyed the property in full title. The mutual attempt by the Kent Company, Limited, and Mr. Waters at least some twenty years later to make the declaration of an omission is unavailing. We judge that the theory that the deed might have been only of a servitude was fathered by the fact that the railway company abandoned its tracks, and probably from that moment on gave very little surveillance to this land.

G. Now we shall consider the matter of the assessment of this property for taxes. We find that the Kent Company never placed the property on the rolls for taxation purposes. This fact reaffirms our previous conclusion that it made no pretense of having sold anything else but the property in full title. The railway company, after it abandoned the use of its tracks, did fail to assess the property. We attribute this to pure neglect or purposeful evasion of taxes. Mr. Waters never did place the property on the rolls for taxation purposes. It was only when Messrs. Polk and Robinson became the owners by purchase from Waters, as late as in 1940, that the property was assessed for taxation. Obviously, these vagaries in the as-

sessment of this property for taxes are not a source of help in reaching a decision.

H. The release by Mrs. Ringgold of her mortgage against the vendor, Kent Company, on the very same date as the sale by this company to the railway company, April 26, 1913, by its language is clearly the release of her mortgage and vendor's lien on the property in full title; if she or the two parties executing the sale, the Kent Company and the railway company, were thinking of the sale of a servitude, the release by Mrs. Ringgold of her vendor's lien and mortgage would have been only so far as a servitude was concerned. So this salient of the case supports our conclusion that the sale was one in full title.

I. It is only on March 6, 1940, twenty-seven years after the sale in 1913, that the Kent Company and Waters are moved to a declaration that an error or omission had occurred.

J. The Kent Company did not take possession of, nor exercise any right of ownership to, the land after the railway company abandoned, in 1926, the use of the property. So, if the abandonment by the railway company of its supposed servitude is the source of information received by Waters that the Kent Company had title to the property, and this was in 1926, there is still a period of fourteen years during which Mr. Waters and the Kent Company remained silent. For it is only in 1940 (as we have said several times) that the declaration of an error and omission was made.

K. It is true that Mrs. Ball acquired her title from the railway company in receivership as late as May 6, 1944; also, that the deed to her was in the nature of a quitclaim, and that there was no warranty of title, even as to the return of the purchase price. We do not conclude that this type of sale by the railway company is an indication of its want of faith in the validity of its title. It is in receivership; there is a desire on its part for the dispatch of the receivership and the consequent lack of a desire to enter a litigation that would be long-lasting. Its disposition is to get something and be through with it.

L. The paragraphing of the deed (the quoted portion hereinabove) indicates a title in fee instead of a servitude, because in the first paragraph we find the language: "the following described property, to-wit." This would indicate a full title to property and not a qualified title. Then in the second paragraph, when the words "a right of way" appear, they are used in a way of description of the eventual use of the property which is being sold in full title. Then in the third paragraph, the description becomes direct and actual, as if the language were following the very first paragraph and the second paragraph were omitted.

M. The richness of consideration should sustain the sale of the greater, the fee-simple title, and not the lesser, the servitude, for there are three considerations: (a) The sum of $1,017 (not inconsequential, but very substantial, as indicated before, for 3.39 acres); (b) the "enhancement in value of the adjoining lands by the construction of said railroad"; and (c) "the said Railway Company shall provide and thereafter maintain the necessary cattle guards, cross roads, and cross drains, and shall when requested fence the right of way."

All in all, we come to the conclusion that the evidence strongly predominates in favor of Mrs. Ball's claim. Her title is that of the Alexandria and Western Railway. That was the only title extant when she purchased from the railway company. The Kent Company, Limited, has never had title to this property in our opinion since April 26, 1913, when it sold in full title to the Railway Company.

The facts having been thus ascertained and declared by us, the consideration of the case in the alternative, that is, in the view that the original deed in 1913 conveyed only a servitude and not a title in full fee, is omitted. Should our decision be overruled, on remand the alternative contentions will be weighed, one side against the other, and a decision then reached.

Judgment will be signed ordering the amount of money on deposit to be paid to Mrs. Mattie O. Ball.