**SHATFORD v. GULF REFINING CO.**
Civil Action No. 1761.

District Court, W. D. Louisiana,
Shreveport Division.
May 10, 1946.

Mahony & Yocum, of El Dorado, Ark., and Sholars & Gunby, of Monroe, La., for plaintiff.

Frederick E. Greer and Alex. F. Smith, both of Shreveport, La., for defendant.

PORTERIE, District Judge.

On July 6, 1938, W. P. Beaird, E. W. Parks and Aileen Wells Parks, residents of Obion, Tennessee, executed a mineral lease in favor of W. W. Blocker, who, in turn, assigned it to the Gulf Refining Company on August 19, 1938. The lease provides that it shall remain in force for a term of ten years and as long thereafter as minerals are produced in paying quantities from the leased land, but on condition that the lessee commence a well on or before the anniversary date, or on or before that date the lessee shall pay to the lessors a rental of $640. It further provides that the commencement of a well may be further deferred for annual periods successively by making such rental payments, but in the failure of any annual rental payment timely made, the mineral lease is vitiated.

On November 17, 1944, the lessors conveyed to plaintiff one-sixth interest in the minerals in the land covered by the lease and on the same date conveyed one-sixth interest in the minerals to W. F. Powell. Plaintiff thereafter conveyed to others an undivided one twenty-fourth interest.

On December 8, 1944, W. F. Powell furnished defendant with a certified copy of the mineral deed by which he had acquired an undivided one-sixth interest in the minerals. Powell does not enter this case at all.

On May 3, 1945, the plaintiff wrote to the defendant that he was the owner of an undivided one-eighth royalty in the land covered by the lease and suggested that he was entitled to a portion of the rentals.

On May 9, 1945, defendant replied to plaintiff's letter and requested plaintiff to furnish defendant with a copy of the deed by which he had acquired his interest.

On June 25, 1945, defendant mailed to the Commercial Bank at Obion, Tennessee, two of defendant's checks, one in the amount of $533.84 (fifty cents thereof being for payment of exchange) and the other in the amount of $107.17 (fifty cents thereof being for payment of exchange), both checks being payable to the bank, and requested the bank to deposit the larger amount to the credit of W. P. Beaird, E. W. Parks, and Aileen Wells Parks and the smaller amount to the credit of W. F. Powell in payment of rental under the lease for the lease year commencing July 6, 1945. Both amounts were received by the bank on June 26, 1945, and deposited on that day to the credit of the parties named in accordance with the request of defendant.

The defendant had made rental payments for all previous years in a similar manner by depositing in the Commercial Bank at Obion, Tennessee, the full amount of the rental to the credit of W. P. Beaird, E. W. Parks and Aileen Wells Parks, no mineral sales having been made prior to those made to plaintiff and W. F. Powell.

A peculiar coincidence of facts appears in this case. On the same day, to-wit: June 25, 1945, two things occurred. (1) The defendant mailed to the Commercial Bank at Obion, Tennessee, a check in payment of rental to Beaird and the two Parks, and (2) the plaintiff mailed to defendant a certified copy of the deed by which plaintiff had acquired his interest.

Was the amount on deposit at Obion, Tennessee, entered in the names of the persons Beaird and the two Parks, who were not actually the owners at the time of plaintiff's share, before the certified copy of the deed held by plaintiff, the real owner at the time, reached the hands of defendant at its office at Shreveport, Louisiana? Which litigant had the burden of this inquiry?

We shall now discuss the case generally. The following provisions of the lease should be quoted:

"It is agreed that this lease shall remain in full force for a term of 10 years from this date and as long thereafter as either oil, gas, sulphur or other mineral is produced from said land in paying quantities."

"If no well be commenced on said land on or before the 6th day of July, 1939, this lease shall terminate as to both parties, unless the Lessee on or before that date shall pay or tender to the Lessor or to the Lessor's credit in the Commercial Bank at Obion, Tennessee, or in the Commercial National Bank in Shreveport, Shreveport, Louisiana, which banks, and their successors, are the Lessor's agents and which shall continue as the depositories regardless of changes in the ownership of said land, the sum of Six Hundred Forty and no/100 ($640.00) dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively."

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the Lessee until after the Lessee has been furnished with a written transfer or assignment or a true copy thereof * * *."

We quote now from the mineral deed of November 17, 1944, aforementioned:

"It is understood between the parties hereto that this sale is made subject to any valid and duly recorded oil and gas lease, but covers and includes one-sixth (⅙) of all the oil royalties and gas rentals or royalties due and to become due under the terms of any such lease, and a like interest in all money rentals that may be hereafter paid in order to keep such lease in effect without drilling."

In order to keep the lease in force, the lessee was required to commence a well on the leased land on or before July 6, 1939, or "on or before" that date pay or deposit $640 to the credit of the lessors in the Commercial Bank at Obion, Tennessee, or in the Commercial National Bank in Shreveport, Louisiana.

The contract then says:

"In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

■ Let us consider the first principle of law to be applied. The contract for interpretation here is one with a suspensive condition (condition precedent at common law), to-wit: that it was a renewal of lease yearly; a new contract, as it were, totally left at the option of lessee upon the condition precedent that the lease was terminated unless the lessee paid or tendered to lessor, or deposited to his credit in a named depository bank, by a designated date, a certain specific sum.

The full discussion found in the case of Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co., 119 La. 793, 44 So. 481, is fully informative of this theory of our law. Read particularly in the Southern Reporter, on rehearing, at page 501 to 506. See Louisiana Civil Code, Articles 2021, 2043. See also Yerger v. Simmons, 136 La. 280, 67 So. 3; La. Civil Code, Article 2471; Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193, 196 to 199; 1 Thornton Oil and Gas, 5th Ed., p. 247, sec. 136.

The rule of our civil law has been followed by our Fifth Circuit in Gillespie v. Bobo, 271 F. 641. It says on the facts, 271 F. at page 644:

"* * * We think the incorrectness of the address made use of kept the mailing of the check from being a sending of it to Mrs. Bobo within the meaning of the contract. The result would not have been different if the name stated in the address had been that of another person, a stranger to the contract."

From the same case, same page, on the law:

"Such instruments as the one in question have been passed on frequently by the courts of Texas. It is well settled by the decisions of those courts that such an instrument confers on the so-called lessee a privilege for the specified time, with the

732

option to secure the extension of the privilege for an additional period upon complying with the prescribed condition, and that time is of the essence of such a provision as the one above set out. Ford v. Barton, Tex.Civ.App., 224 S.W. 268; Bailey v. Williams, Tex.Civ.App., 223 S.W. 311; Young v. Jones, Tex.Civ.App., 222 S.W. 691; Ford v. Cochran, Tex.Civ.App., 223 S.W. 1041. The equitable rule as to relieving against forfeitures has no application to the case of a failure of a holder of an option to do, within the time fixed, what is required to acquire the thing which is the subject of the option. Equity does not undertake to dispense with compliance with what is made a condition precedent to the acquisition of a right. Kelsey v. Crowther, 162 U.S. 404, 16 S.Ct. 808, 40 L.Ed. 1017; Waterman v. Banks, 144 U.S. 394, 12 S.Ct. 646, 36 L.Ed. 479; 1 Pomeroy's Eq.Juris. (4th Ed.) § 455."

See also 2 Summers, Oil and Gas, Perm. Ed., p. 223, § 339.

■ We think under the law that the *possible* term of the lease was ten years, but the term during which it might be renewed or extended upon exercise of the option granted or performance of the condition upon which its "very existence" was suspended and upon which the "birth of a right" was dependent, was a matter of yearly renewal. As a practical fact, the contract was reborn every year in the absence of drilling, upon payment in time of the rent. It is accepted that the lease absolutely died if the condition precedent were not fulfilled.

It is clear that the defendant has the right to pay on or before the anniversary date, and the "before" provision is of practical necessity. We must keep in mind that in the lease contract there are the words:

"* * * if the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the Lessee until after the Lessee has been furnished with a written transfer or assignment or a true copy thereof * * *."

■ Though keeping well in mind this practical necessity, we must not forget that the payment, tender, or deposit must be made to, or to the credit of, the one who under the terms of the lease is entitled to receive it, and, more, not later than on the specific date fixed in the contract. Le Rosen v. North Central Texas Oil Co., 169 La. 973, 126 So. 442; Clingman v. Devonian Oil Co., 188 La. 310, 177 So. 59. Nor may the amount to be paid to one of the parties lessor be deposited to the credit of his co-lessor. Empire Gas & Fuel Co. v. Saunders, 5 Cir., 22 F.2d 733.

The contention of defendant is that on June 25, 1945 (not so many days earlier than July 6, the last day upon which renewal of the lease could be maintained by payment of rental), the plaintiff had not yet furnished a certified copy of his deed, though as early as May 3rd he had written that he was "the owner of one-eighth of the royalty." Furthermore, it urges that since May 9th, defendant had written to Shatford of its readiness to "change our records to reflect your ownership" as soon as "you furnish us with photostatic copies of certified copies of your deeds out of our lessor W. P. Beaird, E. W. Parks, and Aileen Wells Parks, into your name." Finally, it contends that it had mailed, about eleven days before the expiration date, to the then owners on its own records the check to the Tennessee Bank, and that was before the plaintiff's photostatic copy of ownership reached it.

The defendant finally countered under the facts of this case that the lease was extended for a new and additional twelve months from July 6, 1945, irrespective of the actual change in ownership, in the lessor's interest, which had been on file in the Parish of the situs of the property since November 20th, but photostatic copy of which was not mailed to defendant, according to the provisions of the recorded contract, before June 25th.

■ Let us now consider the second principle of law to apply. The clause here at issue, which grants an option to lessee

for an extension of its rights, is to be construed strictly against the lessee. Le Rosen v. North Central Texas Oil Co., 169 La. 973, 126 So. 442, 443. See, also, Eastern Oil Co. v. Smith, 80 Okl. 207, 195 P. 773; Braswell v. Columbia County Development Co., 153 La. 691, 96 So. 534; Harter v. Edwards, 108 Kan. 346, 195 P. 607; 1 Thornton, Oil & Gas, 5th Ed., 247, sec. 136; Summers, Oil and Gas, Perm.Ed. Vol. 2, § 372.

"Oil and gas leases are construed most strongly against the lessee and in favor of the lessor." Rives v. Gulf Refining Co., 133 La. 178, at page 194, 62 So. 623, at page 629. "All doubts as to the meaning of an oil lease are construed against the lessee." Nelson v. Roy, 1 La.App. 654, 657.

In Glassell v. Richardson Oil Co., 150 La. 999, 1007, 91 So. 431, it was said at page 434 of 91 So. with respect to the interpretation of an oil lease contract:

"A construction which entirely neutralizes one provision of a written instrument should not be adopted if the contract is susceptible of another, which gives effect to all of the provisions. Board of Trustees v. Campbell, 48 La.Ann. 1543, 21 So. 184; Lozes v. Segura Sugar Co., 52 La.Ann. 1844, 28 So. 249; Whited & Wheless v. Calhoun, 122 La. 100, 47 So. 415."

And in Knight v. Blackwell Oil & Gas Co., 197 La. 237, 1 So.2d 89, at page 92:

"By adopting the lessee's interpretation of the lease, all of the provisions contained therein are given effect, whereas, by following the lessor's views, the elimination of important clauses therefrom would be necessary. The latter method of construction is contrary to the well-recognized rules of interpretation contained in our Civil Code and the jurisprudence, which support the lessee's position in this case. Articles 1945 through 1962, inclusive, Revised Civil Code; Gautreaux et al. v. Harang et al., 190 La. 1060, 183 So. 349; Lozes v. Segura Sugar Co., Ltd., 52 La.Ann. 1844, 28 So. 249, and Glassell v. Richardson Oil Co., 150 La. 999, 91 So. 431."

See La.Civ.Code, arts. 1945 to 1962.

There was lack of diligence in the offices of defendant—a large Company with much business—because after it had written to Shatford that upon the receipt of a photostatic copy its record would be changed to reflect Shatford's ownership, and by letter of June 25th from Shatford, received by defendant on June 26th, the photostatic copies were enclosed to the defendant, it acknowledged the receipt of both letters in a letter concluding with the statement, "We wish to advise that we have changed our records to reflect your interest in the above lease." We make the conclusion at the beginning of this paragraph because this letter of acknowledgment shows that the defendant did not realize that the day before, on June 25th, it had sent the money to a bank at Obion, Tennessee, paying the rental to the wrongful owner, nor did the defendant in this letter state that plaintiff had been too slow or neglectful, or because of having slept on his rights had become estopped from proving this late his ownership, so as to receive the next year's rental.

This neglect of defendant makes it lose this case. On this June 26th it could easily have telegraphed or telephoned the bank at Obion, Tennessee, not to make the deposit to Beaird and the two Parks which covered the portion which they had assigned to Shatford. The defendant was not actually aware, because of its negligence, of the incorrect remittance; so there was no notice of any kind sent to the bank.

The letter of defendant dated June 28th, still before July 6th, acknowledging plaintiff's letter of June 25th with photostatic copies of deeds enclosed, and advising plaintiff that defendant's records had been changed to reflect his interest, precludes, in our opinion, the defendant in all its claims in this case.

Each case of this character is to be decided upon its own facts. In this case, with our modern means of communication, especially the telegraph or telephone, when the defendant had ten days of notice, it may not excuse itself from having paid the wrong party, and tell the rightful owner to go fetch for himself.

There was nothing to prevent the defendant from paying the right party, plaintiff, at the bank in Tennessee, before July 6th, even though it had sent the money to be deposited to the wrong parties. This might have meant double payment. It is just an obligation that defendant must incur to protect itself. Recovery from the party wrongfully paid would be generally successful.

We firmly believe anyway in this case that the remittance to the wrong party could have been stopped and the remittance to the right party in time have been very easily accomplished.

■ On the question of the respective burdens of proof, we grant (a) that the plaintiff to maintain his case must prove that the defendant did not pay plaintiff any part of the rental for the lease year commencing July 6, 1945, and that the defendant has never commenced a well on the leased land. These two requisites of proof are admitted by stipulation (Item 18).

■ We rule that the burden of proving (b) that the amount on deposit at Obion, Tennessee, was entered in the names of Beaird and the two Parks before the certified copy of plaintiff's deed reached the hands of defendant at Shreveport (if it be an effectual defense) is upon the defendant. This proof was not furnished by defendant; we then must assume the contrary.

■ One of the contentions of defendant is that "until plaintiff shows that rentals were paid *after he furnished defendant with a copy of his deed,* and that he received no part of such rentals, he has failed to make out his case." (Italics its.) Because of the two principles of law dominating the case previously noted and discussed, and because of our ruling on the respective burdens of proof, this contention must fall. The fallacy of this contention would better appear if payment of the rental had been twenty days earlier, leaving a gap of thirty days between the date of payment of the rental and July 6th, the expiration of the time to pay the rent. In that situation assignments would practically be prohibited for this thirty days. The law favors commercial activity; it does not suppress it.

Furthermore, it is defendant's duty to prove that it had paid the rental before it received the photostatic proof of plaintiff's acquisition before it may make this argument. This it has failed to do, and if we are permitted to make an inference (and we should be, for since defendant has the burden of proof on this item the legal presumption is against it), we judge that the photostatic proof from El Dorado, Arkansas, had reached the Shreveport office of the defendant before the defendant's check leaving Shreveport had become a deposit in the bank at Obion, Tennessee. The latter distance is much the longer.

■ The defendant shows that plaintiff, after having sent his letter of May 3rd to defendant indicating ownership, to which letter defendant on May 9th stated that upon receipt of the photostatic copy or a certified copy of this acquisition the defendant would change its records to reflect the new ownership, allowed forty days to pass before he sent the evidence, and that this was a negligence on the part of plaintiff such as to preclude his complaint. Our answer to this claim is that it, the defendant, likewise, after having been apprised, failed to request for a second time this evidence during the same forty days. A reference by the defendant to the public records during the period would have been informative and protective, too. Pretermitting this mutual and concurrent neglect, we still believe defendant should have paid the rental to the proper person when it had ten days to do so.

■ Judgment in keeping with plaintiff's complaint—except that the attorney's fees under Act No. 168 of 1920, as stipulated, will be fixed at $500 instead of $1000 —will be signed upon presentation.