## GULF REFINING CO. v. SHATFORD.

### No. 11702.

Circuit Court of Appeals, Fifth Circuit.

Feb. 5, 1947.

Rehearing Denied Feb. 27, 1947.

Alex F. Smith, Frederick E. Greer and Melvin Evans, all of Shreveport, La., for appellant.

Allan Sholars and Geo. Gunby, both of Monroe, La., and H. S. Yocum, of El Dorado, Ark., for appellee.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

Gulf Refining Company owns a mineral lease covering a section of land in the Delhi Oil Field, Parish of Richland, Louisiana. John E. Shatford, who bought an interest in the mineral rights in the lands after the execution of the mineral lease, brought action against Gulf seeking cancellation of the lease as to his one-eighth interest in the mineral rights and for attorneys' fees under Act 168 of the Louisiana Legislature of 1920. Shatford claimed that Gulf had failed to pay him the proportionate share of delay rental attributable to his one-eighth interest, and that such failure to pay rental to him terminated the lease as to this one-eighth interest. Shatford's claims were upheld, judgment of cancellation and for attorneys' fees was entered, and Gulf has appealed.

The case was submitted below on an agreed statement of facts and documentary evidence. The facts are rather fully set out in the opinion of the district judge. Shatford v. Gulf Refining Company, D.C., 65 F.Supp. 728.

The mineral lease was originally executed on July 6, 1938, in favor of one W. W. Blocker. Gulf became assignee of Blocker's interest on August 18, 1938. The lease provides that it is to remain in force for a period of ten years and as long thereafter as minerals are produced in paying quantities, but on the condition that lessee com-

232

mence a well on or before the anniversary date of the lease or pay delay rental in the amount of $640 on or before that date. It further provides that the commencement of a well may be further deferred for annual successive periods by paying delay rental on or before the respective anniversary dates. The lease names the Commercial Bank of Obion, Tennessee, and the Commercial National Bank of Shreveport, Louisiana, as depositories and agents of lessors to receive delay rental.

Gulf did not commence drilling operations and, in compliance with the delay rental provisions of the lease requiring payment of $640 *"on or before"* anniversary dates of the lease, mailed its check for delay rental to the Commercial Bank of Obion, Tennessee, with instructions to deposit the amount to the credit of W. P. Beaird, E. W. Parks, and Aileen Wells Parks, the lessors. The check was received by the bank and the amount was credited as directed on June 24, 1939. Delay rental for lease years commencing July 6, 1940, 1941, 1942, 1943, and 1944 were paid by Gulf in a similar manner; deposits being made to the credit of original lessors on June 26, 1940, June 26, 1941, June 30, 1942, June 28, 1943, and June 23, 1944.

The lease provides that either lessors or lessees may assign their interests "in whole or in part". It is further provided, however, that any change in ownership of the land or assignment of rentals or royalties shall not be binding on the lessee *"until after the Lessee has been furnished with a written transfer or assignment or a true copy thereof"*.

On November 17, 1944, the lessors conveyed to Shatford a one-sixth interest in the minerals in the lands covered by the lease, and on the same day conveyed to one W. F. Powell a one-sixth interest in the minerals. Shatford, by subsequent assignment, reduced his holdings to a one-eighth interest.

In keeping with the lease provisions that lessee would not be bound by any transfer or assignment until it had been furnished *"a written transfer or assignment or a true copy thereof"*, Powell furnished Gulf a certified copy of the mineral deed by which

he had acquired his undivided one-sixth interest in the minerals. Shatford ignored the provisions of the lease and gave no notice of any kind to Gulf until nearly six months later, on May 3, 1945, when he wrote a letter advising Gulf that he was the owner of "one-eighth of the royalty" in the land covered by the lease, and suggesting that he was entitled to a portion of the rental. Gulf replied promptly to Shatford's letter with a request that he furnish "photostatic copies or Certified copies" of his deeds, "and we will be in a position to change our records to reflect your ownership." A month and a half passed and Gulf heard no more from Shatford. The anniversary date was approaching *"on or before"* which Gulf had to pay delay rental or lose its lease. On June 25, 1945, eleven days before the anniversary date, Gulf mailed to the Commercial Bank of Obion two checks in payment of the delay rental for the seventh lease year commencing July 6, 1945. One check was for $533.84 (including a fifty cent exchange fee) for deposit to the account of lessors, Beaird and E. W. and Aileen W. Parks; and one check was for $107.17 (including a fifty cent exchange fee) for deposit to the credit of W. F. Powell, who had sent in a certified copy of the deed showing him to be a one-sixth owner of the minerals. The checks were received by the bank, and deposits were made on June 26, 1945, to the credit of the named parties.

On June 26, 1945, the day after Gulf had mailed its checks to lessor's agent bank, Gulf finally received from Shatford photostatic copies of deeds showing his acquisition of an interest in the minerals. Gulf, by letter of June 28, 1945, acknowledged receipt of the photostatic copies and advised Shatford "we have changed our records to reflect your interest in the above lease". Having already paid delay rental to keep the lease alive for the ensuing year, sending its checks to lessors' agent bank for deposit to Beaird, the Parks, and Powell, Gulf made no payment to Shatford. Because of Gulf's failure and refusal to pay to Shatford an additional amount as his proportionate share of delay rental, Shatford's claims for cancellation and attorneys' fees were sustained by the lower court.

■ We are of opinion that Shatford failed to make out a case for cancellation and award of attorneys' fees. Aside from the interesting legal theories advanced by both appellant and appellee, and the interesting discussion by the district judge in his opinion, we think the case must turn simply upon the meaning and application of the plain and unambiguous terms of the lease contract.

■ To keep its valuable lease alive in the absence of drilling operations Gulf was bound to pay delay rental in the amount of $640 *"on or before"* the anniversary date to the ones who, under the lease, were entitled to receive it. Le Rosen v. North Central Texas Oil Co., 169 La. 973, 126 So. 442; Clingman v. Devonian Oil Co., 188 La. 310, 177 So. 59. Gulf was not required to wait until the last minute of the last day to make the payment that would keep its lease alive for another year. Each year Gulf, acting in accordance with the *"on or before"* provision of the lease, paid the delay rental about ten days "before" the anniversary date.[1] The crucial issue is whether Gulf paid the rental to the ones who, under the lease, were entitled to receive it at the time it was paid? Gulf was required to pay lessors their proportionate shares of delay rental. However, Gulf was not bound by any transfer or assignment of interests until it had received a *"written transfer or assignment or a true copy"*. This provision in the lease is a reasonable and valid one, written in clear and unambiguous language. Shatford, who bought his way in as a lessor after execution of the lease, was bound by this provision, but he did not diligently comply with it. He waited almost six months before he made a move. Then he only wrote a letter. After he was advised that Gulf, as it had a right to do, required a copy of his deeds, he

made no move for another month and a half. During all this time while Shatford was doing nothing, Gulf's time was running out and the anniversary date was approaching. In late June, about the time of year it always forwarded rental payments to lessors' agent bank, Gulf moved to safeguard its interests and paid the rentals to lessors' agent bank for deposit to Beaird, the Parks, and Powell, the persons whose "written" evidence of ownership it had. Gulf did not direct the lessors' agent bank to deposit anything to the credit of Shatford because Gulf had not received a copy of any transfer or assignment in his favor. Had Shatford acted diligently and sent copies of his deeds prior to the time Gulf paid the rental money, he would have received a share in proportion to his holdings. Contrast Shatford's conduct with that of Powell who received his one-sixth interest on the same day Shatford received his. Powell sent in certified copies of his deed, and when the rental was paid, Powell received his proportionate share. Payment to Powell certainly discloses the forthright honesty and good intent of Gulf to pay rental on time to the persons entitled to receive it.

■ To now permit Shatford to cancel the lease so far as it affects his one-eighth interest would be to reward him for his negligence and punish Gulf for living up to its contract. The rental money had been sent to the lessors' agent bank prior to the time Gulf received copies of Shatford's deeds. Shatford should not now look to Gulf for his portion of that rental money; he should look to those persons who received it—the persons from whom he secured his interest.

The judgment is reversed and the cause is remanded with direction to enter judgment for Gulf Refining Company.

Reversed and remanded.

---

[1] We need not discuss whether Gulf could have paid delay rentals months or years in advance of anniversary dates and thereby insulated itself from liability to assignees who had bought interests in the minerals or gave notice of purchases subsequent to such advance payments. Certainly, the payment in the case at bar, made just a few days before the deadline, was within the letter and spirit of the *"on or before"* provision of the lease. Indeed the early payment was a reasonable and prudent, safe business procedure.